J-S30028-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: TERMINATION OF PARENTAL RIGHTS OF S.D. AND W.F. AS TO THE MINOR CHILD A.W.F. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: W.F., FATHER OF THE MINOR CHILD | : | |
| | : | No. 1880 WDA 2017 |

Appeal from the Decree November 2, 2017
In the Court of Common Pleas of Elk County
Orphans' Court at No: No. 3 of 2016

BEFORE: BENDER, P.J.E., STABILE, J., and STRASSBURGER, J.*

MEMORANDUM BY STABILE, J.: **FILED AUGUST 2, 2018**

W.F. ("Father") appeals from the decree entered November 2, 2017, in the Court of Common Pleas of Elk County, which terminated involuntarily his parental rights to his minor son, A.W.F. ("Child"), born in July 2011.[1] After careful review, we affirm.

The record reveals that Elk County Children and Youth Services ("CYS") became involved with this family in 2014, after it received reports alleging deplorable living conditions in Father's home. N.T., 7/7/16, at 7. The reports further alleged that drug use was occurring in the home and "that threats were being made" against Child's older sister, J.E.D. *Id.* CYS obtained custody of

---

* Retired Senior Judge assigned to the Superior Court.

[1] The decree also terminated the parental rights of S.D., Child's mother. S.D. filed an appeal at Superior Court docket number 1879 WDA 2017. We address her appeal in a separate memorandum.

Child pursuant to an emergency order dated September 4, 2014. The trial court adjudicated Child dependent by order dated September 10, 2014.

On January 8, 2016, CYS filed a petition to terminate Father's parental right to Child involuntarily. The trial court conducted a termination hearing on July 7, 2016, November 10, 2016, and February 1, 2017.[2, 3] Following the hearing, on November 2, 2017, the court entered a decree terminating Father's parental rights. Father timely filed a notice of appeal on November 28, 2017, along with a concise statement of errors complained of on appeal.

Father now presents the following questions for our review:

I. Whether the trial court erred as a matter of law or abused its discretion by involuntarily terminating [Father's] parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1)?

II. Whether the trial court erred as a matter of law or abused its discretion by involuntarily terminating [Father's] parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2)?

III. Whether the trial court erred as a matter of law or abused its discretion by involuntarily terminating [Father's] parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(5)?

---

[2] The hearing actually began on March 31, 2016, but Father was not present or represented by counsel that day, and the testimony focused on Child's older half-brother, C.J.D., who is not Father's child.

[3] The trial court appointed Thomas G.G. Coppolo, Esquire, to represent Child during the termination proceedings. Our review of the record indicates that Attorney Coppolo provided adequate representation of Child's legal interests during the hearing. However, we note with disapproval that Attorney Coppolo failed to file a brief advocating for Child's legal interests on appeal. **See In re Adoption of T.M.L.M**., 184 A.3d 585, 590 (Pa. Super. 2018) (explaining that counsel's duty to represent a child continues on appeal).

IV. Whether the trial court erred as a matter of law or abused its discretion by involuntarily terminating [Father's] parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(8)?

V. Whether the trial court erred as a matter of law or abused its discretion by finding that terminating [Father's] parental rights would best serve the child's needs and welfare pursuant to 23 Pa.C.S.A. § 2511(b)?

Father's Brief at 5 (unnecessary capitalization and trial court answers omitted).

We review a decree terminating parental rights involuntarily in accordance with the following standard:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Section 2511 of the Adoption Act, 23 Pa.C.S.A. § 2511, governs involuntary termination of parental rights. It requires a bifurcated analysis:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of

the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the trial court terminated Father's parental rights pursuant to Section 2511(a)(1), (2), (5), (8), and (b). We need only agree with the court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Here, we analyze the court's decision to terminate under Section 2511(a)(8) and (b), which provides as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.
>
> ***
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the

- 4 -

control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(8) and (b).

We first address whether the trial court abused its discretion by terminating Father's parental rights pursuant to Section 2511(a)(8):

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(8), the following factors must be demonstrated: (1) The child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1275-76 (Pa. Super. 2003). Termination under Section 2511(a)(8) does not require consideration of a parent's willingness or ability to remedy the conditions that led to the removal of his or her child.  *In re Adoption of R.J.S.*, 901 A.2d 502, 511 (Pa. Super. 2006).

In its opinion accompanying the termination decree, the trial court found that Child has remained in foster care for longer than twelve months, and that the conditions leading to Child's removal continue to exist.  Trial Court Opinion, 11/2/17, at 10, 15, 17.  The court reasoned that Father failed to comply with services in a timely manner, failed to obtain suitable housing, and failed to maintain a healthy relationship with Child.  *Id.* at 13-15.  The court further found that terminating Father's parental rights would best serve Child's needs and welfare.  *Id.* at 16.  The court reasoned that there is no evidence

that Father and Child share a necessary and beneficial bond, and that Child will not suffer irreparable harm. *Id.* The court concluded that Child's relationship with Father is, at best, "a primary or basic parental bond . . . that is not secure." *Id.*

Father contends that the trial court erred by finding that CYS presented sufficient evidence to terminate his parental rights. Father's Brief at 33. Father maintains that the court removed Child from his care due primarily to poor housing conditions, and that he remedied those conditions by obtaining a suitable home. *Id.* at 34. Father insists that CYS visited his home only twice, that the home was inadequate during only one of those visits, and that he was performing work on the home at that time. *Id.* at 27-29. Father also insists that his delay in finding a suitable home resulted from his financial circumstances, and from his inability to find someone willing to rent to him. *Id.* at 29-30.

Our review of the record supports the trial court's findings. As discussed above, the trial court removed Child from Father's care in September 2014. By the time the court terminated Father's parental rights in November 2017, Child had been removed from Father's care for over three years, well beyond the twelve months required by Section 2511(a)(8).

In addition, the record is replete with evidence supporting the trial court's finding with respect to the second requirement of Section 2511(a)(8), that the conditions which led to the removal of Child continue to exist. During the termination hearing, CYS presented the testimony of caseworker, Carrie

Shutters. Ms. Shutters testified that the court ordered Father to comply with several goals. N.T., 7/7/16, at 13-15. Father's goals included completing parent/child interactive therapy, completing an anger management program, completing a drug and alcohol assessment and following all recommendations, completing a mental health assessment and following all recommendations, participating in services to help teach cleaning and organizational techniques, completing age-appropriate parenting education classes and demonstrating appropriate parenting skills, and obtaining and maintaining safe and stable housing. *Id.* at 15.

Concerning Father's compliance with these goals, Ms. Shutters testified that Father completed parent/child interactive therapy sometime in 2015. *Id.* at 14. Father also completed an anger management program, but he did not begin the program until March 16, 2016, and did not finish it until May 5, 2016. *Id.* at 15. Ms. Shutters reported that Father's anger management program did not appear to be successful. *Id.* She recalled, "I made a phone call to him, and he was upset with me. He yelled, screamed at me and swore at me and then hung up the phone." *Id.*

Ms. Shutters further testified that Father did not complete a drug and alcohol assessment until March 29, 2016. *Id.* at 13. After completing the assessment, Father failed to sign the release necessary for Ms. Shutters to contact his doctor and confirm that he "was prescribed the medications which he states he was." *Id.* Father completed a mental health intake "after March" 2016, but did not complete the assessment. *Id.* Father did not participate in

services to help teach cleaning and organizational techniques, and began but did not complete parenting classes.[4]  *Id.* at 14, 24.  Relatedly, Ms. Shutters testified that CYS cancelled eleven of Father's forty-nine possible visits with Child, because he did not call to confirm or failed to appear.  *Id.* at 20.  Father arrived late at fifteen of the visits, and ended one visit early.  *Id.*

Concerning Father's housing, Ms. Shutters testified that Father moved twice after Child entered foster care.  *Id.* at 10-11.  Father moved into his current home in approximately December 2015.  *Id.* at 11.  Ms. Shutters reported that she made eleven attempts to visit Father's home between December 2015 and March 2016 before he allowed her to see it.  *Id.* at 12. She explained,

> I would call and ask if I could come.  I would ask them, when they were at visits, if I could come see the house, and I was told repeatedly that I could not come; it was not ready yet.  And then they told me on several days that I could come see it the next day, and then they would cancel and say that they weren't going to be home.

*Id.* at 12-13.

When Ms. Shutters finally succeeded in conducting a visit at Father's home, it appeared to meet "all the standards."  *Id.* at 12.  However, when Ms. Shutters returned and conducted a surprise visit in May 2016, she discovered that the home was now dirty and unsafe.  *Id.* at 12, 16.  She recalled, "[t]he pathways were not clear.  There was -- were piles of paint

---

[4] Father testified later, on November 10, 2016, that he did complete parenting classes.  N.T., 11/10/16, at 44.

chips lying around. . . . there were shoes in the middle. There were boxes. There were just household items scattered around. The kitchen, there were dirty items on the counter." *Id.* at 26.

Thus, it is clear that the conditions leading to Child's removal from Father's care remain unresolved. Each of Father's court-ordered goals related in some way to addressing the concerns and circumstances resulting in Child's removal. However, Father did not complete the majority of those goals, and did not even begin working toward many of them until after CYS filed its petition to terminate his parental rights. The Adoption Act prohibits trial courts from considering efforts first initiated by a parent after receiving notice of the filing of a termination petition. *See* 23 Pa.C.S.A. § 2511(b) ("With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition."). In addition, we reject Father's claim that his failure to obtain suitable housing more quickly was due to his financial circumstances, or due to his difficulty finding someone who would rent to him. The record indicates that Father had housing throughout Child's dependency. It appears that Father's problem was not finding housing, but keeping the housing that he had in a safe and sanitary condition.

Finally, the record supports the trial court's findings with respect to the third requirement of Section 2511(a)(8), that terminating Father's parental rights would best serve Child's needs and welfare. On November 10, 2016,

CYS presented the testimony of psychologist, Allen H. Ryen, Ph.D. Dr. Ryen testified that he conducted a bonding assessment of Father and Child, and authored a report detailing his findings. N.T., 11/10/16, at 6-9. During his assessment, Dr. Ryen did not observe any evidence that Father and Child share a primary or secure bond. *Id.* at 10. He opined that terminating Father's parental rights would not be harmful to Child, but that he would anticipate "closure and security emanating from that sort of a decision." *Id.* at 25.

In his report, Dr. Ryen wrote that he conducted an interview of Child, followed by an observation of Child and Father interacting during a visit. Dr. Ryen's Report, 5/28/16, at 4-7. During the interview, Child referred to Father by his first name, rather than "Dad" or "Daddy." *Id.* at 5. Child criticized Father at length, describing the poor living conditions of his previous home, and recounting that Father was "'the worst. . . . [he] locked us in the bedroom for no reason. . . . we were always scared.'" *Id.* at 4. Child insisted that Father is "'bad,'" and that it would be "'really bad'" if he had to live with him again. *Id.*

During the interactional portion of the assessment, Child showed little interest in Father. Dr. Ryen wrote that Child approached Father to show him a toy truck, "regressing significantly . . . and becoming much more active than previously observed." *Id.* at 5. Child became increasingly agitated and out of control, while Father did nothing to address his behavior. *Id.* at 6. When the assessment was over, Child "left hastily, without any farewell greetings or

- 10 -

backwards glances, and . . . appeared more than anxious to leave the office."

*Id.* at 7.

Thus, Child does not share a necessary or beneficial bond with Father. As Dr. Ryen's report demonstrates, Child is hostile toward Father and does not want to return to his care. Child does not even refer to Father as his father, instead calling him by his first name. Combined with Father's failure to remedy the conditions leading to Child's placement in foster care, it is clear that terminating Father's parental rights would best serve Child's needs and welfare. We conclude that CYS met its burden of proof with respect to all three requirements of Section 2511(a)(8), and that the court did not abuse its discretion.

We next consider whether the trial court abused its discretion by terminating Father's parental rights pursuant to Section 2511(b). The requisite analysis is as follows:

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have

> with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (quotation marks and citations omitted).[5]

As we stated above, the trial court concluded that terminating Father's parental rights would best serve Child's needs and welfare. Trial Court Opinion, 11/2/17, at 16. The court reasoned that there is no evidence of a necessary and beneficial bond between Father and Child, and that Child will not suffer irreparable harm. *Id.*

Father challenges Dr. Ryen's opinion that Child does not share a primary or secure bond with him. Father's Brief at 36-40. Father maintains that Child's behavior during the bonding assessment "was influenced by the negative attitudes and opinions of both [Child's] older sister as well as the maternal uncle and his paramour, who were the foster parents at the time of the assessment." *Id.* at 37. Father suggests that other evidence presented

---

[5] Section 2511(a)(8) and (b) both require trial courts to consider the needs and welfare of the child. However, the needs and welfare analysis required by Section 2511(a)(8) is distinct from the needs and welfare analysis required by Section 2511(b), and must be addressed separately. *See In re C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*) ("[W]hile both Section 2511(a)(8) and Section 2511(b) direct us to evaluate the 'needs and welfare of the child,' . . . they are distinct in that we must address Section 2511(a) before reaching Section 2511(b).").

during the termination hearing rebuts the court's finding that no bond exists. *Id.* at 39-40.

We conclude that Father is not entitled to relief. Even accepting for the sake of argument that Child's older sister or former foster parents played some role in his negative view of Father, that does not excuse Father's failure to cultivate a meaningful relationship with Child during his lengthy dependency, nor does it excuse Father's failure to remedy the conditions resulting in Child's placement in foster care. Contrary to Father's argument, the record is clear that Child does not have a necessary or beneficial bond with him, and that Child is in need of permanency and stability that he cannot provide. It was well within the court's discretion to conclude that Child's needs and welfare would best be served by severing his relationship with Father.

Based on the foregoing, we conclude that the trial court did not abuse its discretion by terminating Father's parental rights to Child involuntarily. Therefore, we affirm the court's November 2, 2017 decree.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/2/2018

- 13 -