J-S42039-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE ADOPTION OF: M.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.S., BIOLOGICAL MOTHER | : | |
| | : | No. 305 MDA 2018 |

Appeal from the Decree January 12, 2018
in the Court of Common Pleas of Cumberland County
Orphans' Court at No(s): 113-Adopt-2017

BEFORE:   BOWES, MCLAUGHLIN, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.              **FILED SEPTEMBER 04, 2018**

K.S. (Mother) appeals from the decree entered January 12, 2018, in the Court of Common Pleas of Cumberland County, which terminated involuntarily her parental rights to her minor son, M.S. (Child), born in November 2012.[1] Mother's counsel has filed a petition to withdraw and brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  Upon review, we deny counsel's petition to withdraw, vacate the decree without prejudice, and remand for further proceedings consistent with this memorandum.

Cumberland County Children and Youth Services (CYS) has a lengthy history of involvement with this family, dating back to 2014, and resulting in

_____

* Retired Senior Judge assigned to the Superior Court.

[1] The orphans' court entered a separate decree that same day, terminating involuntarily the parental rights of Child's unknown father.

two periods of dependency and four separate placements in foster care for Child. ***See*** CYS Exhibit 1 (dependency orders). Most recently, CYS obtained legal and physical custody of Child on May 23, 2016, due to concerns stemming from Mother's deteriorating mental health and possible substance abuse. ***Id.*** The juvenile court adjudicated Child dependent by order dated June 13, 2016, but returned him to Mother's care after she produced a negative drug screen. ***Id.*** This lasted just over four months, until Mother admitted to cocaine use, and CYS obtained emergency protective custody on October 6, 2016. ***Id.*** The juvenile court entered a shelter care order dated October 18, 2016, and Child has remained in foster care continuously since that time. ***Id.***

On November 28, 2017, CYS filed a petition to terminate Mother's parental rights to Child involuntarily. The orphans' court conducted hearings on December 8, 2017 and January 12, 2018, after which it entered a decree terminating Mother's rights. Mother timely filed a notice of appeal on February 12, 2018, along with a concise statement of errors complained of on appeal.[2]

---

[2] Generally, a party must file his or her notice of appeal within thirty days after entry of the order. ***See*** Pa.R.A.P. 903(a) ("Except as otherwise prescribed by this rule, the notice of appeal ... shall be filed within 30 days after the entry of the order from which the appeal is taken."). Thirty days after January 12, 2018, was Sunday, February 11, 2018. Thus, Mother timely filed her notice of appeal on Monday, February 12, 2018. ***See*** 1 Pa.C.S. § 1908 ("Whenever the last day of any such period shall fall on Saturday or Sunday, ... such day shall be omitted from the computation.").

Mother's counsel filed a petition to withdraw and ***Anders*** brief on May 16, 2018.

We begin by addressing the petition to withdraw and ***Anders*** brief. ***See Commonwealth v. Rojas***, 874 A.2d 638, 639 (Pa. Super. 2005) (quoting ***Commonwealth v. Smith***, 700 A.2d 1301, 1303 (Pa. Super. 1997)) ("'When faced with a purported ***Anders*** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.'"). This Court extended the ***Anders*** procedure to appeals from decrees terminating parental rights involuntarily in ***In re V.E.***, 611 A.2d 1267 (Pa. Super. 1992). To withdraw pursuant to ***Anders***, counsel must comply with the following requirements.

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [***Anders***] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

***Commonwealth v. Cartrette***, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citing ***Commonwealth v. Lilley***, 978 A.2d 995, 997 (Pa. Super. 2009)). Counsel must provide this Court with a copy of the letter advising the appellant of his or her rights. ***Commonwealth v. Millisock***, 873 A.2d 748, 752 (Pa. Super. 2005).

Additionally, our Supreme Court has set forth the following requirements for ***Anders*** briefs.

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

In the instant matter, counsel filed a petition to withdraw and *Anders* brief stating that he conducted a review of the record and determined that Mother's appeal is frivolous. Counsel's brief includes a summary of the facts and procedural history of this case, a list of issues that could arguably support the appeal, and counsel's assessment of why those issues are frivolous, with citations to the record and relevant legal authority. Counsel also provided this Court with a copy of his letter to Mother, advising her of her right to obtain new counsel or proceed *pro se*.[3] Thus, counsel complied substantially with the requirements of *Anders* and *Santiago*, and we may proceed to review the issues outlined in his brief. We must also "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted).

---

[3] In addition, counsel indicates in his letter that he is enclosing a copy of his petition to withdraw and brief.

After careful review of the record, we have identified an issue relating to Child's statutory right to counsel. Child's right to counsel derives from the Adoption Act, which requires that children receive counsel in all contested involuntary termination proceedings.

> **(a) Child.--**The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian *ad litem* to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S. § 2313(a).

Our Supreme Court has explained that the term "counsel" in subsection 2313(a) refers to an attorney directed by the child who represents his or her legal interests. ***In re Adoption of L.B.M.***, 161 A.3d 172, 180 (Pa. 2017). A child's legal interests are distinct from his or her best interests. ***Id.*** at 174. Specifically, while a child's legal interests are synonymous with his or her preferred outcome, a child's best interests must be determined by the trial court. ***Id.***

We find instructive this Court's holding in ***In Re Adoption of T.M.L.M.***, 184 A.3d 585 (Pa. Super. 2018). That case involved a child who was just under six years old at the time of the hearings to terminate his mother's parental rights. ***Id.*** at 590. The child's attorney did not attempt to interview him, nor did she set forth his preferred outcome on the record. ***Id.*** at 589-

90. The attorney advocated solely for the child's best interests during the hearings, rather than his legal interests. *Id.* at 590. Finally, the attorney did not file a brief on appeal, nor did she join a brief filed by another party. *Id.*

This Court concluded that the attorney's representation failed to comply with the requirements of subsection 2313(a) and *L.B.M.*, *supra*, and vacated the order terminating the mother's parental rights. We explained our decision as follows.

> At the time of the hearings, Child was just shy of six years old. While Child may not have been old enough to participate actively in [the attorney's] representation of him, it is not unlikely that Child has feelings one way or another about his mother and his permanency. Like adult clients, effective representation of a child requires, at a bare minimum, attempting to ascertain the client's position and advocating in a manner designed to effectuate that position. It may be that Child's preferred outcome in this case is synonymous with his best interests. It may be that Child wants no contact with Mother. Child may be unable to articulate a clear position or have mixed feelings about the matter. Furthermore, termination of Mother's rights may still be appropriate even if Child prefers a different outcome. However, … it is clear that where a court appoints an attorney ostensibly as counsel, but the attorney never attempts to ascertain the client's position directly and advocates solely for the child's best interests, the child has been deprived impermissibly of his statutory right to counsel serving his legal interests.

*T.M.L.M.*, 184 A.3d at 590.

Similarly, in the matter under consideration here, Child was just over five years old at the time of the termination hearing, and there is nothing in the record to suggest that he was unable to provide at least some input as to his preferred outcome. *See In re T.S.*, ___ A.3d ___, 2018 WL 4001825 at *7 (Pa. 2018) (distinguishing two- and three-year-old children whose young age

rendered them unable to form "a subjective, articulable preference" from "children as young as five or six years of age [who have] opinions which are entitled to weight in legal proceedings concerning their custody")(citing Pa.R.P.C. 1.14, Explanatory Comment 1)).  However, we have uncovered no evidence indicating that Child's appointed legal counsel met with him in order to ascertain that preference.  We also have found no evidence indicating that counsel attempted to advocate for that preference during the course of the termination proceedings.

Our review of the record reveals the following.  The trial court appointed Damian DeStefano, Esquire, as counsel for Child by order entered October 13, 2017.  For reasons that are unclear, Attorney DeStefano did not appear on Child's behalf during the first day of the termination hearing on December 8, 2017.  Instead, Amy Russo, Esquire, represented Child. Attorney DeStefano then appeared and represented Child during the second day of the hearing on January 12, 2018.  Neither attorney participated in any meaningful way.  They did not present evidence, ask questions, or argue on Child's behalf.  They did not indicate that they interviewed Child, nor did they clarify Child's preferred outcome on the record.  Additionally, we observe with disapproval, they did not file a brief on appeal. *See T.M.L.M.*, 184 A.3d at 590 ("Counsel's duty to represent a child does not stop at the conclusion of the termination of parental rights hearing.").

Further complicating this matter, Child's preferred outcome is not clear from any other source in the record. During the termination hearing, CYS presented only general testimony describing Child's relationship with Mother. Caseworker, Katie Whitney, testified that Child's visits with Mother go well, but that she did not think terminating Mother's parental rights would harm Child. N.T., 12/8/2017, at 17, 26. Child's pre-adoptive foster mother, D.H., testified that Child does not talk or ask about Mother and that he is more excited to attend visits so that he can see his half-siblings. *Id.* at 29-30, 32. She agreed that terminating Mother's parental rights would not harm Child. *Id.* at 29. Mother then presented conflicting testimony that Child wants to return to her care. *Id.* at 34.

Based on these deficiencies, we cannot conclude that Child received the benefit of counsel representing his legal interests and directed by him, and we must deny the petition to withdraw filed by Mother's counsel. In a typical *Anders* case, we would direct Mother's counsel to file an advocate's brief arguing the issue of Child's right to counsel. *See Commonwealth v. Tejada*, 176 A.3d 355, 362 (Pa. Super. 2017) (denying counsel's petition to withdraw and directing her to file an advocate's brief, where her *Anders* brief included an issue that was not frivolous). However, when addressing a parent's right to counsel in the *Anders* context, this Court has chosen to vacate the termination decree and remand without requiring an advocate's brief. *See In re X.J.*, 105 A.3d 1, 7 (Pa. Super. 2014) (vacating the termination decree in

an **Anders** case, where the record revealed that the appellant did not receive counsel). We believe that this is the more prudent course of action, because it will remedy Child's lack of adequate legal representation in an expedient fashion.

Therefore, we deny the petition to withdraw filed by Mother's counsel and vacate the decree terminating her parental rights without prejudice. On remand, Attorney DeStefano must interview Child and attempt to discern his preferred outcome.[4] He must then notify the trial court of that preference. If

---

[4] This Court has stated the following with regard to interviews of children by legal counsel.

> We recognize that ascertaining a child's position is a difficult task. It often entails undergoing a delicate conversation that needs to be undertaken with sensitivity and skill, and differs from an interview that an attorney would conduct of an adult. Nevertheless, our legislature has tasked legal-interests counsel with this job. **See L.B.M.**, 161 A.3d at 180 (holding, in a section joined by five Justices, that "when a child's relationship with his or her birth family could be severed permanently and against the wishes of the parents, the legislature made the policy judgment, as is evident from the plain, unambiguous language of the statute, that a lawyer who represents the child's legal interests, and who is directed by the child, is a necessity"). Accordingly, it is incumbent upon legal-interests counsel to do all that counsel can to create a relationship of trust between counsel and client, and then explain, commensurate with a child's level of development, the nature of the legal proceedings, followed by specific questions to ascertain the child's desired outcome and the direction the child wants counsel to take. We observe that Pa.R.P.C. 1.14 provides some guidance for representation of clients with diminished capacity.

**In re M.D.Q.**, ___ A.3d ___, 2018 WL 3322744 at *4 n.2 (Pa. Super. filed July 6, 2018).

Child is either unable or unwilling to provide a preferred outcome, Attorney DeStefano must inform the court of that as well. If Child's preferred outcome is consistent with the result of the prior termination proceeding, or if Child is unable or unwilling to express a clear preferred outcome, the court may reenter its January 12, 2018 decree. If Child's preferred outcome is inconsistent with the result of the prior termination proceeding, the court must conduct a new hearing, during which Attorney DeStefano must advocate actively for Child's legal interests. *See In re Adoption of D.M.C.*, __ A.3d __, 2018 WL 3341686 (Pa. Super. filed July 9, 2018). If for some reason Attorney DeStefano is unable or unwilling to undertake these obligations, the court must appoint new counsel.

Decree vacated without prejudice to permit the trial court to reenter the original decree if a new hearing is not held. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/04/2018

- 10 -