J-S32024-18 & J-S32025-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: J.M.T., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: O.L.T., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 202 MDA 2018 |

Appeal from the Decree January 12, 2018
In the Court of Common Pleas of York County Orphans' Court at No(s):
2017-0157

| | | |
|---|---|---|
| IN RE: ADOPTION OF: J.M.T., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: O.L.T., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 203 MDA 2018 |

Appeal from the Order Entered January 12, 2018
In the Court of Common Pleas of York County Orphans' Court at No(s):
2017-0156

BEFORE:    PANELLA, J., NICHOLS, J., and PLATT*, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED SEPTEMBER 11, 2018**

O.L.T. (Mother) appeals from the decree and order granting the petitions

filed by the York County Office of Children, Youth and Families (CYF) seeking

_____

* Retired Senior Judge assigned to the Superior Court.

to involuntarily terminate her parental rights to her minor, male twin children, Ji.M.T. and Jr.M.T.[1] (born in June of 2012) (collectively, Children).[2]  Following our review, we are constrained to vacate the order and remand this case for further proceedings.

The procedural history of this case is as follows.  On April 28, 2016, CYF received allegations that Mother left Children without supervision.  The York City Police Department responded to Mother's residence and found Children alone.  Mother returned to the residence twenty minutes later and smelled of alcohol.  Mother was incarcerated on April 28, 2016, for endangering Children's welfare.  Mother's cousin, R.M. (Foster Mother), came forward as a resource for Children and was approved as an emergency caregiver.

On April 29, 2016, the Agency filed applications for emergency protective custody.  Attorney Thomas L. Kearney, IV, was the court-appointed

---

[1] As the trial court explained, since Children have the same initials, they were designated as Ji.M.T. and Jr.M.T. in the respective petitions.  Trial Ct. Op., 2/16/18, at 1.  We have consolidated Mother's appeals from the decrees terminating her parental rights to Children for the purposes of disposition.

The trial court also granted the goal changes to adoption.  Mother's appeal from those orders are listed at 198 & 199 MDA 2018 and are addressed in a separate memorandum.

[2] At all times relevant to this appeal, L.A.T. (Father) was incarcerated at the Somerset State Correctional Institution in relation to his guilty pleas to possession of a firearm prohibited, a second-degree felony, and burglary of an overnight accommodation with a person present, a first-degree felony. Father did not appeal the trial court's decrees.

guardian *ad litem* (GAL) for Children. In orders for emergency protective custody dated April 29, 2016, the trial court concluded that there was sufficient evidence to prove that continuation or return of the minor children to the Mother's home was not in the best interest of Children. The trial court temporarily awarded legal and physical custody of Children to the Agency, and Children were placed with Foster Mother.

On May 4, 2016, the Agency filed dependency petitions. The following day, Mother was released from prison, and began having unsupervised contact with Children. Justice Works opened for services with Mother on May 17, 2016. On May 31, 2016, a first family service plan (FSP) was prepared for Mother, which permitted unsupervised visitation at Mother's home.

On June 20, 2016, a CYF caseworker made a field visit to Mother's residence and found Children outside and unsupervised. The caseworker repeatedly knocked on Mother's door. Mother did not answer the door for approximately fifteen minutes. After that incident, Mother's visits with Children were changed to visits supervised by Foster Mother.

On July 19, 2016, the trial court adjudicated Children dependent under 42 Pa.C.S. § 6302(1). The court maintained legal and physical custody with the Agency and ordered Children to remain in kinship care. The permanency goal was return to a parent or guardian, with a concurrent goal of adoption. On September 20, 2016, Justice Works closed services as unsuccessful.

On August 29, 2017, CYF filed petitions to involuntarily terminate the parental rights of Mother and change Children's permanency goal to adoption under 23 Pa.C.S. § 2511(a)(1), (8), and (b). On September 8, 2017, the trial court entered orders appointing the GAL, Attorney Kearney, to serve as Children's legal counsel.

On December 15, 28, and 29, 2017, the trial court conducted an evidentiary hearing on the petitions. Mother and her counsel were present. Children were present and were represented by Attorney Kearney as their GAL and legal counsel. On December 29, 2017, the trial court found that CYF established grounds for termination of Mother's parental rights under 23 Pa.C.S. § 2511(a)(1), (8), and (b). The decree and order terminating Mother's parental rights were entered on January 12, 2018.

On January 29, 2018, Mother timely filed notices of appeal, along with concise statements of errors complained of on appeal, with the trial court. The trial court filed an opinion relying on its oral ruling at the hearing.

Before addressing Mother's issues on appeal, we must address whether the representation of the Children provided by Attorney Kearney satisfies the requirement of 23 Pa.C.S. § 2313(a). *See In re K.J.H.*, 180 A.3d 411, 413 (Pa. Super. 2018) (holding that this Court must raise *sua sponte* the issue of child's right to counsel).

Section 2313(a) provides:

> The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being

- 4 -

contested by one or both parents. The court may appoint counsel or a guardian *ad litem* to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S. § 2313(a).

Our Supreme Court has highlighted the distinction between "counsel" representing a child's legal interests and a GAL representing a child's best interests. *See In re Adoption of L.B.M.*, 161 A.3d 172, 180 (Pa. 2017) (plurality). The *L.B.M.* Court noted that a child's legal interests "are synonymous with the child's preferred outcome." *Id.* at 174. A child's "best interests" denotes what is believed to be "best for the child's care, protection, safety, and wholesome physical and mental development regardless of whether the child agrees." *Id.* at 174 & n.2. This Court has interpreted the lead and concurring opinions in *L.B.M.* as permitting a GAL to act as a child's legal counsel so long as there is no conflict between a child's legal interests and best interests. *See In re D.L.B.*, 166 A.3d 322, 329 (Pa. Super. 2017).

More recently, however, this Court has sought to clarify the role of a child's legal counsel. In *In re Adoption of T.M.L.M.*, 184 A.3d 585 (Pa. Super. 2018), an attorney served in dual roles as GAL and legal counsel for a child, who was at the time under six years old. *T.M.L.M.*, 184 A.3d at 587-90. However, the attorney did not attempt to interview the child, set forth the child's preferred outcome, or advocate for the child's legal interests during

the hearings. *Id.* at 588-90. Instead, the attorney focused solely on the child's best interests. *Id.*

The *T.M.L.M.* Court concluded that the child had been deprived of his statutory right to counsel, reasoning that

> effective representation of a child requires, at a bare minimum, attempting to ascertain the client's position and advocating in a manner designed to effectuate that position. It may be that [the c]hild's preferred outcome in this case is synonymous with his best interests. It may be that [the c]hild wants no contact with [m]other. [The c]hild may be unable to articulate a clear position or have mixed feelings about the matter. Furthermore, termination of [m]other's rights may still be appropriate even if [the c]hild prefers a different outcome. However, . . . it is clear that where a court appoints an attorney ostensibly as counsel, but the attorney never attempts to ascertain the client's position directly and advocates solely for the child's best interests, the child has been deprived impermissibly of his statutory right to counsel serving his legal interests.

*Id.* at 590. Accordingly, the *T.M.L.M.* Court vacated the order terminating the mother's parental rights and remanded for appointment of legal counsel. *Id.* at 591.

In *In re Adoption of D.M.C.*, ___ A.3d ___, ___, 2018 PA Super 200, 2018 WL 3341686 (Pa. Super. filed July 9, 2018), the trial court appointed separate counsel for children,[3] who were approximately thirteen and four-and-one-half years old. *D.M.C.* 2018 WL 3341686 at *2. However, the record did

---

[3] The trial court in *D.M.C.* previously appointed GALs for children in the dependency matters before the juvenile court. *D.M.C.*, 2018 WL 3341686 at *2.

not indicate whether counsel was representing children's best interests or their legal interests.

Specifically, the trial court's appointment of counsel in **D.M.C.** did not clarify the role to which counsel was appointed, and counsel's own filings did not assert that he was acting as legal counsel. **Id.** at *2-3. Moreover, counsel asserted that he only spoke with the thirteen-year-old child on the phone on the night before the termination hearing. **Id.** at *3. Counsel ascertained that the older child loved his mother, and that there was a bond with mother. Counsel, however, believed that children were "ready for permanency." **Id.** Counsel concluded:

> I think it's actually at this point in their best interests, so that they get the permanency.
>
> The other thing I'd say is that I hope that [Children and Youth Services] would encourage whoever the permanent adoptive parents are, maybe they'd promote PACA [post-adoption contact agreement]. I think in this instance, I think that's something that would be good for the [children], particularly, [the child to whom counsel spoke]. I think it would be good for the boys. They know [mother]. They love [mother]. While [mother] may not be the best for them long-term to care for their daily needs, I think that relationship should be maintained even if it's a minimum.

**Id.** (citation and emphasis omitted). Counsel, in his brief filed in mother's appeal, further asserted that the thirteen-year-old child wanted to be adopted but also wanted continued contact with mother. **Id.** at *4. However, there was no indication that counsel attempted to ascertain, set forth, or advance

the four-and-one-half year old child's preferred outcome prior to the termination hearing or mother's appeal.[4]  **Id.**

The  **D.M.C.**  Court concluded: "Nothing in the record indicates definitively that the orphans' court appointed [counsel] as such legal counsel. Moreover, nothing in the record indicates definitively that [counsel] advocated for [the children's] legal interests and followed the direction of [the children]."  **Id.** *5.  Because the record was unclear on "whether [the children] received the benefit of their statutorily-required right" to legal counsel, this Court vacated the order and remanded for the appointment of new counsel for the children.  **Id.** at *5-6.

Instantly, the trial court appointed the GAL, Attorney Kearney, to serve as legal counsel.  Following the close of testimony on December 15, 2017, the

---

[4] The **D.M.C.** Court suggested that although a caseworker testified the four-and-one-half year old child may be too young to express a preferred outcome, some indications as to that child's preferences were:

> (1) [the child] enjoys visits with [m]other; (2) [the child] enjoys spending time with his foster family; (3) [the child] used to throw temper tantrums when visits with [m]other ended, but that behavior stopped as visits continued, (4) [the child] "knows he can't go home" with [m]other; (5) during supervised visits, [the child] runs to give [m]other a hug; (6) [the child] "appeared happy to see" [m]other at supervised visits; [and] (7) [the child] sometimes plays by himself during [m]other's supervised visits, but also enjoys playing with [m]other.

**D.M.C.**, 2018 WL 3341686 at *4 n.9 (citations omitted).

trial court, with all counsel present, examined Children. Children had difficulty focusing, could not clearly answer whether they were capable of telling the truth or a lie, and at times provided nonsensical answers.[5] After the Children were excused, Attorney Kearney and the court had the following exchange:

> ATTORNEY KEARNEY: Just for the record, I spoke to both of the boys individually. I shouldn't say individually, they were actually both in the room when I was talking to them. The caseworker, Brandon [Ambrose], was present when I had this conversation with them. I attempted to try to get their sense of where they want to be, and basically the answers I got were very jumbled. If I really had to boil it down, they basically said they would rather be at both places, both with [Mother] and with [Foster Mother]. I didn't get a definitive this is definitively were I want to be versus here. It was that they both wanted to be basically at both places is the sense I got. Again, that is my translation of a very childish conversation, which I did not feel was really comprehended by [Children].

> THE COURT: Yeah. Clearly they are not at the point where we are getting any useful information. They really didn't get past the truth or a lie question, so I'm not sure that we can -- you know, it is good to get a sense of [C]hildren, but I can't really take anything as testimony at this point.

N.T., 12/15/17, at 125-26.

---

[5] For example, Jr.M.T. answered that that he would not get a timeout if he told a lie at home, but then stated he would get "[a] corner." N.T., 12/15/17, at 113. When the court asked whether it was true that Ji.M.T.'s black shirt was red, Ji.M.T. incorrectly answered, "[t]ruth," but then later stated his shirt was black and indicated "[i]t is corner time." *Id.* at 113-14. When asked who lived at the house Santa Claus would visit, Jr.M.T. indicated Foster Mother, Mother, Mother's adult daughter, and Father. *Id.* at 114. After noting that he liked talking to his Father on the telephone, Ji.M.T. replied, "[n]owhere," when asked how much he talked to Father. *Id.* at 116. Ji.M.T. stated that he loved Mother, Foster Mother, and Father, but also that there was no one that he did not love. *Id.* at 124. Ji.M.T. repeatedly answered "cotton candy" to various questions.

During the hearing, however, it was undisputed that Children shared a bond with and attachment to Mother. A family engagement specialist testified that, in more recent visits, Children would run to the waiting room and hug Mother. *Id.* at 61. The Children call Mother "Mommy" and Foster Mother "Nam-maw." *Id.* at 62. The Children remain attached to Mother, but also have a bond with Foster Mother. *Id.* at 74. During one of the last visits with Mother, Jr.M.T. stated "I want to go home with you, Mommy" as Mother was preparing to leave. *Id.* at 103.

However, in his examination of the witnesses and his closing statement, Attorney Kearney did not refer to the existing bonds between Mother and Children or assert that Children might want continued contact with Mother. Attorney Kearney made no reference to the family engagement specialist's testimony that on at least one occasion, one child expressed wanting to be with Mother. Rather, Attorney Kearney focused solely on Mother's conduct and misconduct, as well as the best interests of Children. *See* N.T. 12/19/17, at 207 (informing the trial court that he "definitely" believed that it was in Children's best interests that Mother's rights be terminated and that they would be at "great risk" if they were ever to go back to Mother).

Under these circumstances, we are constrained to conclude that there is the possibility of a conflict in Attorney Kearney's role as GAL and as legal

counsel for Children.[6]   Attorney Kearney attempted to ascertain Children's preferences as to where they wanted to live in at least one conversation and deduced that Children wanted to be with Foster Mother and Mother at the same time.[7]  Nevertheless, there is no indication of Attorney Kearney's efforts to discern further Children's possible preferences as to the outcome in light of the possibility that the existing bonds with Mother could be permanently severed.[8]  **_See D.M.C._**, 2018 WL 3341686 at *4 n.9, *5-6.

Thus, because the record is unclear as to whether Children received their statutorily mandated right to legal counsel, we must remand this matter to the trial court.  **_See id._**  Upon remand, the court shall appoint new legal counsel for Children to ascertain and, if necessary, represent their legal interests.  Legal counsel shall review the prior proceedings, have an appropriate consultation with Children, and notify the trial court whether the

---

[6] Although the trial court definitively appointed Attorney Kearney as legal counsel, the clarity in the formal appointment of the GAL as legal counsel is not determinative.  **_See T.M.L.M._**, 184 A.3d at 590.

[7] We reiterate that appointment as legal counsel for young children poses unique challenges, particularly where the children may have mixed feelings or are unable to provide counsel with clear direction.  **_See T.M.L.M._**, 184 A.3d at 590.  Nevertheless, this Court has tended to approach  children's statutory right to counsel with a strong measure of caution as to the possibility of a conflict of interest.  **_See id._** at 590 (noting that "it is not unlikely" that a child nearing six years old "has feelings one way or another about his mother and his permanency").

[8] We note that there was ample evidence of tension between Mother and Foster Mother although the two are cousins.  Foster Mother did not testify that she would be agreeable to post-termination visitation by Mother.

result of the prior proceedings was consistent with Children's legal interests or whether counsel believes a new hearing is necessary to provide counsel an opportunity to advocate on Children's behalf. The trial court shall conduct a new hearing only if it provides Children with an opportunity to advance their legal interests through new counsel.

Decree and order vacated. Case remanded with instructions. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/11/2018