J-A06044-18

2018 PA Super 87

IN RE: ADOPTION OF: T.M.L.M., : IN THE SUPERIOR COURT OF
A MINOR : PENNSYLVANIA
:
:
APPEAL OF: S.L.M., NATURAL MOTHER : No. 1480 WDA 2017

Appeal from the Order Dated September 5, 2017
in the Court of Common Pleas of Cambria County
Orphans' Court at No(s): No. 2016-963 IVT

BEFORE: BENDER, P.J.E., SHOGAN, and STRASSBURGER, JJ.*

OPINION BY STRASSBURGER, J.: **FILED APRIL 13, 2018**

S.L.M. (Mother) appeals from the order dated September 5, 2017, which terminated involuntarily her parental rights to her minor son, T.M.L.M. (Child), born in June 2011. After review, we vacate the order and remand for proceedings consistent with this opinion.

We derive the following background from the findings of fact made by the orphans' court, all of which are supported by the record. In late January 2014, Mother attempted suicide and was admitted to a psychiatric unit for three days. Cambria County Children and Youth Service (CYS) became involved with Mother shortly thereafter, due to concerns about Mother's mental health, drug and alcohol abuse, lack of supervision of Child and his two siblings, and involvement in domestic violence. The concerns prompted CYS to file a dependency petition, and on June 3, 2014, the juvenile court adjudicated Child dependent and transferred legal and

_____

* Retired Senior Judge assigned to the Superior Court.

physical custody to Child's maternal great-aunt under the supervision of CYS. Orphans' Court Order, 9/5/2017, at 1.

Throughout the almost three years Child was in kinship foster care, Mother's life resembled, in the words of the orphans' court, "a roller coaster ride." *Id.* at 3. The juvenile court in Child's dependency matter initially assessed Mother's compliance with her permanency plan goals as minimal to moderate, but from the December 2015 permanency review hearing onward, Mother was not compliant at all. *Id.* at 3-5. The juvenile court changed Child's permanency goal to adoption at the October 2016 permanency review hearing. *Id.* at 5.

Mother failed to complete successfully drug and alcohol treatment and mental health treatment. *Id.* at 4-5. She did not maintain stable housing. *Id.* Upon discharging Mother from family services, the family services provider assessed her prognosis as "poor," due to her continued denial of responsibility for the family dynamics and lack of cooperation with services. *Id.* at 5-6. The same service provider, on the other hand, described Child as "flourishing" within his kinship foster home. *Id.* at 6.

Mother had long gaps without contact with Child or CYS. *Id.* at 4-5. During one of those gaps, Mother was charged in connection with a large drug bust. *Id.* at 5. On April 18, 2017, Mother pled guilty to a variety of offenses involving the intent to deliver a controlled substance, conspiracy, and other related charges, and was sentenced to 36 months to 72 months of

imprisonment at State Correctional Institute (SCI) Muncy. At the time of the termination hearings, Mother remained incarcerated. *Id.* at 6.

On October 25, 2016, CYS filed a petition seeking to terminate involuntarily Mother's parental rights.[1] The orphans' court conducted hearingS on the petition on January 24, 2017, May 5, 2017, and May 18, 2017. At the hearings, Suzann Lehmier, Esquire represented Child. On September 5, 2017, the orphans' court entered an order terminating Mother's parental rights pursuant to 23 Pa.C.S. §§ 2511(a)(1), (2), (5), (8) and 2511(b) of the Adoption Act. This timely-filed appeal followed. Both Mother and the orphans' court complied with Pa.R.A.P. 1925.

Before we reach the issues presented by Mother on appeal, we address *sua sponte* whether Attorney Lehmier's representation of Child satisfies the requirements of 23 Pa.C.S. § 2313(a).

Child has a clear statutory right to counsel in contested involuntary termination proceedings:

> The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian *ad litem* to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

---

[1] CYS's petition also sought to terminate involuntarily the parental rights of Child's father. That termination was granted on September 5, 2017. Child's father did not contest the petition, participate in Mother's appeal, or file his own appeal.

23 Pa.C.S. § 2313(a).

Appointment of counsel representing the child is mandatory, and failure to do so is legal error. *In re Adoption of G.K.T.*, 75 A.3d 521, 526 (Pa. Super. 2013) (citing *In re E.F.H.*, 751 A.2d 1186, 1189-90 (Pa. Super. 2000)). *See also In re Adoption of N.A.G.*, 471 A.2d 871 (Pa. Super. 1984) (holding 23 Pa.C.S. § 2313(a) creates a statutory right for a child to have counsel appointed who actively advances his or her needs and welfare and owes loyalty exclusively to him or her). This Court must raise the failure to appoint statutorily-required counsel for children *sua sponte*, as children are unable to raise the issue on their own behalf due to their minority. *In re K.J.H.*, ___ A.3d ___, 2018 PA Super 37 (Pa. Super. Feb. 20, 2018).

Between the January 24, 2017 hearing and the May 2017 hearings in this case, our Supreme Court decided *In Re Adoption of L.B.M.*, 161 A.3d 172 (Pa. 2017). In Section I of *L.B.M.*, a section joined by five justices, the Court held that orphans' courts must appoint counsel to represent the legal interests of any child involved in a contested involuntary termination proceeding pursuant to 23 Pa.C.S. § 2313(a). 161 A.3d at 180. In Section II-A, a section joined by five justices, Justice Wecht explained that a child's legal interests are distinct from his or her best interests, in that a child's legal interests are synonymous with the child's preferred outcome, while a child's best interests must be determined by the court. *Id.* at 174.

- 4 -

Importantly, the Justices disagreed on whether the role of counsel may be filled by a guardian *ad litem* (GAL) who also represents child's best interests. In the Court's lead opinion, Justice Wecht, joined by Justices Donohue and Dougherty, opined that a child's legal interests cannot be represented by a GAL. *Id.* at 180–82. However, the Court's remaining four Justices disagreed with that portion of the lead opinion, and opined in a series of concurring and dissenting opinions that a child's dependency GAL may serve as his or her counsel, so long as the GAL's dual role does not create a conflict of interest. *Id.* at 183–93. *See also In re D.L.B.*, 166 A.3d 322, 329 (Pa. Super. 2017) (interpreting *L.B.M.* and declining to remand for appointment of additional counsel for child who was represented by an attorney who advocated for child's non-conflicting best and legal interests).

At the start of the May 5, 2017 hearing, the orphans' court noted for the record its belief that its appointment of Attorney Lehmier satisfied the requirements of *L.B.M.*[2]  N.T., 5/5/2017, at 3 ("And the procedure that I [have] follow[ed] the entire time I have been on the bench during these cases is to appoint counsel, not just a [GAL].  So we have been in conformity with [*L.B.M.*].").  Prior to the statement of the orphans' court,

---

[2] According to the dependency orders entered into the record in the orphans' court matter, *see* CYF Trial Exhibit 4, Child was represented by a GAL in his dependency matter, but it is not clear from the record whether the GAL was Attorney Lehmier or someone else.

Attorney Lehmier had appeared on Child's behalf during the January 24, 2017 hearing, but there is no indication of what role she served during that hearing. No order of appointment appears in the certified record, despite a notation on the docket dated December 9, 2016, indicating that the Court had appointed Attorney Lehmier as GAL on October 26, 2016.

Our review of the record reveals the following regarding Attorney Lehmier's role. During the hearings, she cross-examined certain witnesses but did not introduce any witnesses or evidence. At the conclusion of the hearing, after the orphans' court granted Attorney Lehmier's request to make a statement, Attorney Lehmier stated:

> **I did not have occasion to meet with [T.M.L.M.] or talk with him directly.** [Child's foster mother] did indicate to me[3] that [T.M.L.M.] is in school…[,] that he seems to be doing pretty well, that he's a very athletic child, that he's currently I believe playing soccer, and he's also doing karate – he'll be doing karate this summer.
>
> She indicated to me that there were some rocky times over the past year or so with respect to his behavior and some issues with him acting out in school. She also indicated that it's been pretty much resolved at this point and that she's been keeping him up to date on his different appointments with his counselors and things of that nature and that things have pretty much stabilized, so he seems to be doing pretty well right now.
>
> While I can recognize [Mother's] attempts over the last few months to try to get things in order with her own life, from what I've gleaned from this matter it was quite a transition for

---

[3] Because [T.M.L.M.'s] foster mother did not testify, Mother's counsel objected to Attorney Lehmier's recounting of her conversations with foster mother, but the orphans' court overruled Mother's objection. N.T., 5/18/2017, at 74. Mother does not challenge this ruling on appeal.

[T.M.L.M.] adjusting to living with [his foster mother] and kind of getting a calming influence in his life.

My concern with the court not granting the petition is that there would be additional trauma and turmoil in [T.M.L.M.'s] life with another adjustment coming down the road, and it seems to me that the earliest that this adjustment would happen would be in another 15 months, which would give him more time to kind of settle in to where he is right now and then possibly have that uprooted.

**So that is my only concern, his best interests**, and I'm sure the court will look out for that in deciding this matter. Thank you.

*Id.* at 74-75 (emphasis added).

Notably, we are unable to locate any place in the record, in this statement or otherwise, where Attorney Lehmier set forth Child's preferred outcome.[4] Nor did Attorney Lehmier indicate that she was unable to ascertain Child's preferred outcome due to Child's age, development, or other reason. In fact, she freely admitted that she did not even attempt to

---

[4] Child's position at the time of the hearings is not readily discernible from other sources in the record. The only indications of what Child's position might be are the following: (1) Child periodically requests to call Mother, N.T. 5/5/2017, at 33, 37; (2) Child periodically asks about Mother, *id.* at 35-36; (3) according to the September 28, 2015 permanency review order, Child cries at visits and says he wants to go home to Mother, CYF Trial Ex. 4; (4) according to the December 22, 2015 permanency review order, Child wants to live with his foster mother and visit Mother, *id.*; (5) according to the June 20, 2016 permanency review order, Child wants to live with his foster mother, *id.*; and (6) according to the November 7, 2016 permanency review order, Child "understands he cannot live with [Mother.]" *Id.*

interview Child.[5]  Furthermore, she directly admitted that her "only concern" was his best interests.

Compounding matters is Attorney Lehmier's failure to file a brief in this Court or join the brief of another party.  She also failed to indicate to this Court that she would not be filing a brief and did not attend oral argument despite acknowledging the scheduled date.  Counsel's duty to represent a child does not stop at the conclusion of the termination of parental rights hearing. ***See In re Adoption of J.L.***, 769 A.2d 1182, 1185 (Pa. Super. 2001); ***see also In re M.T.***, 607 A.2d 271, 276 (Pa. Super. 1992) (observing that child's counsel abdicated his legal responsibilities to his client because counsel, *inter alia*, failed to file a brief, indicate that he joined another party's brief, or otherwise notify this Court of his client's position).

We recognize that attorneys may encounter unique challenges when representing children that are different from the challenges they may encounter when representing adults, particularly when the representation concerns such sensitive subject matter.  Nevertheless, counsel representing children must "represent [their clients] with zeal and professionalism. [Children have] no say in [appointment of counsel] and deserve to have the benefit of effective representation, particularly when a matter as important as [their] future relationship with a biological parent is at stake." ***In re***

---

[5] She also does not indicate that another attorney in her firm or social worker or paralegal working on her behalf interviewed or attempted to interview Child.

- 8 -

*J.J.F.*, 729 A.2d 79, 83 (Pa. Super. 1999) (Schiller, J., concurring). Not only do children not have a say in the appointment of counsel, due to their minority, most children are not in a position to assess whether counsel has represented their interests effectively.

At the time of the hearings, Child was just shy of six years old. While Child may not have been old enough to participate actively in Attorney Lehmier's representation of him, it is not unlikely that Child has feelings one way or another about his mother and his permanency. Like adult clients, effective representation of a child requires, at a bare minimum, attempting to ascertain the client's position and advocating in a manner designed to effectuate that position. It may be that Child's preferred outcome in this case is synonymous with his best interests. It may be that Child wants no contact with Mother. Child may be unable to articulate a clear position or have mixed feelings about the matter. Furthermore, termination of Mother's rights may still be appropriate even if Child prefers a different outcome. However, pursuant to the Supreme Court's opinion in Sections I and II-A of *L.B.M.*, it is clear that where a court appoints an attorney ostensibly as counsel, but the attorney never attempts to ascertain the client's position directly and advocates solely for the child's best interests, the child has been deprived impermissibly of his statutory right to counsel serving his legal interests. *L.B.M.*, 161 A.3d at 174, 180.

Based upon our review of the record, we have no basis to conclude that Attorney Lehmier effectively represented Child's legal interests in this matter. Therefore, we hold that Child was deprived of his statutory right to counsel. We recognize that Child has been in foster care for almost four years at this point, and would benefit from achieving permanency. While we do not wish to prolong the uncertainty of Child's future, we are constrained to vacate the order terminating Mother's parental rights and remand for proceedings consistent with this opinion. Upon remand, the court shall appoint separate counsel for Child to represent his legal interests.[6] After review of the prior proceedings and appropriate consultation with Child, Child's legal-interests counsel shall notify the orphans' court whether the result of the prior proceedings is consistent with Child's legal interests or whether counsel believes a new hearing is necessary to provide counsel an opportunity to advocate on Child's behalf. The orphans' court shall conduct a new hearing only if it serves the "substantive purpose" of providing Child with an opportunity to advance his legal interests through his new counsel.[7] *See N.A.G.*, 471 A.2d at 875.

---

[6] Given Attorney Lehmier's failure to represent Child in any fashion on appeal, the orphans' court may, in its discretion, also appoint counsel to represent Child's best interests on remand.

[7] In *N.A.G.*, the children were unrepresented until after the hearings, when the orphans' court realized its mistake and belatedly appointed counsel for the children. Father appealed from the order terminating his rights, arguing, *inter alia*, that this Court should vacate the decree and remand for a new

*(Footnote Continued Next Page)*

Order vacated. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/13/2018

---

*(Footnote Continued)* ────────

hearing wherein the children would have representation. This Court made clear that the failure to appoint counsel prior to the hearings was "contrary to the statute's procedural mandate." ***Id.*** at 874. However, because the children's belatedly appointed counsel confirmed that the children did not wish to alter the termination decree and did not request a new hearing so that counsel could actively participate on their behalf, this Court held that the failure to appoint counsel prior to the hearing was harmless error. ***Id.*** at 874-75. The Court reasoned that the purpose of subsection 2313(a) is to guarantee the child an advocate who owes his or her loyalty exclusively to the child, as opposed to benefitting or creating rights in a contesting parent. ***Id.*** at 874. Thus, the Court declined to remand for a new hearing where a hearing would not serve a "substantive purpose." ***Id.*** at 875.