J-S42009-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: C.K., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: E.G., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 208 MDA 2018 |

Appeal from the Decree Entered December 29, 2017
In the Court of Common Pleas of Northumberland County Orphans' Court
at No(s):  Adoptee # 9 of 2015

BEFORE:   BOWES, J., McLAUGHLIN, J., and STRASSBURGER*, J.

MEMORANDUM BY BOWES, J.:              **FILED SEPTEMBER 19, 2018**

E.G. ("Mother") appeals from the orphans' court decree entered December 29, 2017, that granted the petition of the Northumberland County Children and Youth Social Service Agency ("CYS"), and involuntarily terminated her parental rights to her minor son, C.K.[1]  We vacate and remand for further proceedings consistent with this memorandum.

CYS became involved with C.K. shortly after his birth in October 2012. At the hospital, Mother's care for C.K. raised concerns.  N.T., 7/6/16, at 6. When hospital staff attempted to make recommendations regarding C.K.'s care, Mother became violent, throwing items around her room and at staff.

---

[1]  In separate decrees, the orphans' court terminated the parental rights of J.K., the legal father, and M.C., the biological father.  Neither man appealed the respective decrees or participated in this appeal.

---

*   Retired Senior Judge assigned to the Superior Court.

*Id*. at 6-7. CYS subsequently offered Mother a parenting service, a referral for early head start, and a recommendation for mental health and medication management services. *Id*. at 7. Mother initially cooperated with CYS, but subsequently became uncooperative, moving between Northumberland County and Dauphin County to avoid CYS involvement. *Id*. at 8-9.

CYS then received a referral alleging Mother was drinking, using marijuana, and "popping pills." *Id*. at 10-11. Sarah Austin, a CYS caseworker, went to Mother's home to investigate, and Mother slammed the door in her face. *Id*. at 11. While Ms. Austin waited outside, the police arrived to investigate a domestic dispute between Mother, Mother's brother, and her brother's girlfriend. *Id*. After the police arrived, Ms. Austin went into the home and attempted to drug test Mother, who would not take the drug test, but informed Ms. Austin she would test positive for morphine. *Id*.

Ms. Austin observed the home was extremely cluttered, with safety hazards all over the floor. *Id*. Ms. Austin offered Mother a safety plan if she could identify someone who would be appropriate to supervise Mother's contact with C.K. *Id*. at 12. Mother refused to identify anyone because Mother did not want C.K. removed from her custody. *Id*. at 12-13. CYS obtained an order for temporary custody. *Id*. at 13. Mother became violent, "punching out" the living room window and making suicidal threats. *Id*. Following the incident, Sunbury Community Hospital admitted Mother for twenty days as a psychiatric patient. *Id*. at 14. Subsequently, the juvenile

court adjudicated C.K. dependent on December 18, 2013. N.T., 11/12/15, Exhibit 1.

On March 17, 2015, CYS filed a petition for involuntary termination of parental rights, seeking to terminate Mother's parental rights to C.K. The orphans' court conducted hearings on the petition on November 12, 2015, July 6, 2016, August 31, 2016, and July 19, 2017.[2] Rachel Wiest-Benner, Esquire, served as C.K.'s guardian *ad litem*, and appeared at each hearing. In response

---

[2] Plainly, the two–and-one-half-year timeline presented in this case is unacceptable insofar as it flouts our Supreme Court's mandate that courts resolve children's fast track cases expeditiously. *See **In re T.S.M.**,* 71 A.3d 251, 256 n.12 (Pa. 2013) ("An eight month delay between the filing of a termination petition and a hearing thereon, without some explanation is inconsistent with the best practices for dependent children in need of permanency.").

While the most recent delays were due to the necessity of a court-ordered competency evaluation and Mother's decision to abscond from the termination proceeding, those interruptions do not explain the remaining delays that plagued this case throughout. Indeed, our review of the certified record reveals that the orphans' court granted the parties five separate requests for continuances that delayed the proceedings by 306 days. The case was delayed an additional ninety days when the trial court administrator reassigned it, without explanation, to a different orphans' court judge, who subsequently recused and returned the case to the original judge. Hence, whether through administrative inefficiencies or the orphans' court's liberal grant of continuances, resolution was postponed 396 days.

Furthermore, in addition to the foregoing interruptions, the certified record also discloses an unexplained gap of **five and one-half months** between the penultimate hearing on August 31, 2016, and the ensuing order dated February 14, 2017 that scheduled the final hearing for March 26, 2017. Thus, even ignoring all of the delay attributable to the various continuances, Mother's disappearance, and the competency evaluation, the case was needlessly delayed 168 days without explanation. This scenario is intolerable.

to our High Court's then-new holding in *In re Adoption of L.B.M.*, 161 A.3d 172, 183 (Pa. 2017), on April 10, 2017, the orphans' court appointed Brian Ulmer, Esquire, as legal counsel for C.K. Attorney Ulmer only appeared at the July 19, 2017 hearing. On December 29, 2017, the orphans' court entered a decree terminating Mother's parental rights to C.K.[3] Mother timely filed a notice of appeal, along with a concise statement of errors complained of on appeal.

Prior to addressing the merits of Mother's appeal, we must first address *sua sponte* the representation provided by C.K.'s legal counsel. Pursuant to 23 Pa.C.S. § 2313(a), a child who is the subject of a contested involuntary termination proceeding has a statutory right to counsel who discerns and advocates for child's legal interests, which our Supreme Court has defined as a child's preferred outcome. *In re T.S.*, __ A.3d __, 2018 WL 4001825 at * 1 (Pa. 2018) (citing *In re Adoption of L.B.M.*, *supra*). Because the right to counsel belongs to the child who is unable to address a deprivation of his or her right to counsel on his or her own behalf, we must address this issue *sua sponte*. *See id.* at *5 (holding that the child's statutory right to counsel is non-waivable); *In re K.J.H.*, 180 A.3d 411 (Pa. Super. 2018) (holding that

---

[3] The orphans' court considered the dependency record in its determination. Only limited portions of the dependency record are contained in the certified record.

this Court must determine *sua sponte* whether 23 Pa.C.S. § 2313(a) was satisfied).

Since **L.B.M.**, this Court has clarified the requirements counsel must meet in order to provide adequate representation in termination matters. **See In re Adoption of T.M.L.M.**, 184 A.3d 585, 587-91 (Pa.Super. 2018). Counsel's duty to represent a child does not stop at the conclusion of the termination of parental rights hearing. **Id.** at 590; **see also In re M.T.**, 607 A.2d 271, 276 (Pa.Super. 1992) (observing that child's counsel abdicated his legal responsibilities to his client because counsel, *inter alia*, failed to file a brief, indicate that he joined another party's brief, or otherwise notify this Court of his client's position).

Instantly, the orphans' court did not appoint Attorney Ulmer until April of 2017. Accordingly, C.K. had the benefit of § 2313(a) counsel for only one of the four proceedings in the contested termination case, the July 19, 2017 hearing. However, Mother did not appear for the July 19, 2017 hearing, and the testimony primarily related to determining whether Mother had notice of the hearing, as well as testimony regarding a competency evaluation performed on Mother. Attorney Ulmer engaged in limited cross-examination of some of the witnesses. He did not indicate C.K.'s legal preferences at the hearing, and there is nothing in the record to demonstrate that he interviewed C.K., who was then four and one-half years old, to ascertain his preferred

outcome.[4]  Compounding these issues, Attorney Ulmer neglected to enter his appearance with this Court, file a brief, or join the brief of another party.[5] Further, nothing in the record clearly indicates C.K.'s preference.  There was testimony that C.K. reacted negatively to Mother's presence on occasions, but a bonding evaluation undertaken in March of 2015 revealed that C.K. interacted with Mother without fear or apprehension and demonstrated affection for her.  N.T., 11/12/15, at 147, 195; N.T., 7/6/16, at 94.

Accordingly, in light of the fact the orphans' court failed to ensure that C.K. received the legal representation to which he was entitled pursuant to § 2313(a), and mindful that counsel's obligation to C.K. extended to this appeal,

_____

[4]  At the conclusion of the July 19, 2017 hearing, the orphans' court held the record open to determine why Mother did not appear.  By order dated September 27, 2017, the orphans' court closed the record, finding Mother's proffered excuse, that she was physically unable to travel to the courthouse as a result of being "frozen" by a "severe anxiety attack," was insufficient to continue the hearing.

[5] While there is no indication in the record that Attorney Ulmer withdrew his appearance following the July 19, 2017 hearing, there is also no evidence that he was served with the decree terminating Mother's parental rights, Mother's notice of appeal, concise statement of errors complained of on appeal, or any subsequent document involving Mother's appeal.  To complicate matters even further, the certified record contains a June 29, 2017 order that was entered by a different orphans' court judge **after** that judge had recused himself from the proceeding.  The order purported to appoint Ann Targonski, Esquire as C.K.'s legal counsel; however, it did not mention Attorney Ulmer or recognize the fact that the child's legal interest were already represented, as subsequently confirmed by Attorney Ulmer's participation in the July 2017 hearing.  In addition, the June order was not served on any party, and Attorney Targonski did not enter her appearance, attend any hearings, or represent the child in any capacity.

we vacate the decree in this matter, and remand for further proceedings. *See In re Adoption of T.M.L.M.*, *supra* at 587-91 (vacating and remanding for further proceedings where the attorney admitted she did not interview the nearly six-year-old child to ascertain the child's preferences); *see also In re Adoption of D.M.C.*, ___ A.3d ___, 2018 WL 3341686 (Pa.Super. July 9, 2018) (vacating and remanding where the record was unclear in what capacity the attorney had been appointed to represent the children and whether the attorney had ascertained children's legal interests prior to the hearing); *see also In re Adoption of M.D.Q.*, ___ A.3d ___, 2018 WL 3322744 (Pa.Super. filed July 6, 2018) (vacating and remanding where the record does not indicate that counsel attempted to ascertain the children's preferences and the record does not reflect the children's legal interests).

On remand, we direct the orphans' court to determine Attorney Ulmer's status and, if necessary, appoint substitute legal counsel for C.K. forthwith. Counsel must attempt to ascertain C.K.'s preferred outcome as to Mother by directly interviewing C.K., following his direction to the extent possible, and advocating in a manner that comports with C.K.'s legal interests. Once C.K.'s preferred outcome is identified, counsel shall notify the orphans' court whether termination of Mother's parental rights is consistent with C.K.'s legal interests. If C.K.'s preferred outcome is consistent with the result of the prior termination proceedings, or if a preference cannot be ascertained, the orphans' court shall re-enter its December 29, 2017 decree. If the preferred

outcome is in conflict with the prior proceeding, the orphans' court shall conduct a new termination hearing as to Mother to provide C.K.'s legal counsel an opportunity to advocate on behalf of C.K.'s legal interests. **See T.M.L.M.**, **supra** at 591 (ordering that the trial court shall conduct a new hearing only if it serves the "substantive purpose" of providing the child with the opportunity to advance his legal interests through new counsel).

Decree vacated. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/19/2018