J-S35023-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: J.L., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: K.S. | No. 82 MDA 2018 |

Appeal from the Order December 14, 2017
In the Court of Common Pleas of Tioga County
Orphans' Court at No(s):  29 OC 2017

BEFORE:  BENDER, P.J.E., PANELLA, J., and MURRAY, J.

MEMORANDUM BY PANELLA, J.                    **FILED SEPTEMBER 21, 2018**

K.S. ("Mother") appeals from the order entered December 14, 2017, in the Court of Common Pleas of Tioga County, which involuntarily terminated her parental rights to her minor son, J.L. ("Child"), born in May 2009, pursuant to § 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act. We are unfortunately constrained to vacate and remand for further proceedings consistent with this memorandum.

The trial court set forth the procedural and factual history of this matter, in part, as follows:

> This matter is before the [c]ourt on the [p]etition for [i]nvoluntary [t]ermination of the [p]arental [r]ights of [K.S.], biological mother of [Child]. The [c]ourt notes this matter initially appeared in [d]ependency [c]ourt before Judge Robert Dalton in January of 2011 following the grant of a petition for [e]mergency [p]rotective [c]ustody. In lieu of an adjudication hearing at that time, the child was removed from Mother's custody and placed with the biological father, D.A. A second petition for [e]mergency [p]rotective

[c]ustody was filed and granted by Judge Joy McCoy in August of 2014. Following a [s]helter [c]are [h]earing, the child was returned to the care of Mother and remained with Mother thereafter.

[Child]'s case returned to the [c]ourt's attention on or about July 8, 2015 with the filing of a third application for [e]mergency [p]rotective [c]ustody alleging a failure to supervise, issues of domestic violence and related concerns. The request for [e]mergency [p]rotective [c]ustody was granted. A [s]helter [c]are [h]earing was later held and [Child] was directed to remain in foster care. Dependency and amended [d]ependency [p]etitions were filed[,] and following continuances by both parties, an [a]djudication [h]earing later occurred resulting in the finding of [d]ependency as related to [Child,] and his continued placement in foster care.

[Child] has remained in the legal custody of [the] Department of Human Services pursuant to the [d]ependency action since July 2015. During that time[,] the Department of Human Services has offered supportive services to Mother, including, but not limited to, the Effective Safe Parenting (ESP) and STEPS Programs. Tioga County has also supported housing and counseling services during this case. The Agency has further provided counseling and therapeutic support for [Child] and recommended the same for Mother. [Child] has been diagnosed as suffering from [r]eactive [a]ttachment [d]isorder and is receiving appropriate therapeutic services. Mother has often met with service providers, however, it has been reported on numerous occasions[,] and supported in prior [p]ermanency [r]eview [o]rders[,] that Mother has been unwilling to accept the advice offered through services and has regularly failed to follow through with the recommendations made, limiting the results of the services afforded.

Trial Court Findings of Fact and Opinion, 12/14/17, at unnumbered 2-3.

On March 10, 2017, the Tioga County Department of Human Services, Family Services Division ("DHS"), filed a petition for involuntary termination of parental rights, seeking to terminate Mother's and Father's parental rights

to Child. By order dated April 28, 2017, the trial court appointed attorney Jim Smith, Esquire, "to represent the legal interests of the minor child, J.L., in the above-captioned matter." The trial court conducted hearings on the petition on October 17, 2017, November 29, 2017, and December 1, 2017. Both DHS and Mother called numerous witnesses. Mother testified on her own behalf. On December 14, 2017, the trial court issued findings of fact and an opinion, finding termination appropriate pursuant to § 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act. The trial court entered an order involuntarily terminating Mother's parental rights to Child. Mother timely filed a notice of appeal along with a concise statement of errors complained of on appeal.

Prior to addressing the merits of Mother's appeal, we must first address *sua sponte* the representation provided by Child's legal counsel. **See In re: K.J.H.**, 180 A.3d 411, 412-414 (Pa. Super. 2018). Our Supreme Court, in **In re Adoption of L.B.M.**, 161 A.3d 172, 183 (Pa. 2017) (plurality) held that 23 Pa.C.S.A. § 2313(a) requires that counsel be appointed to represent the legal interests of any child involved in contested involuntary termination proceedings. The Court noted that legal interests are synonymous with the child's preferred outcome, but the child's best interests are determined by the court. **See id**.

Since **L.B.M.**, this Court has clarified the requirements counsel must meet in order to provide adequate representation in termination matters. **See In re Adoption of T.M.L.M.**, 184 A.3d 585, 587-591 (Pa. Super. 2018). Counsel's duty to represent a child does not stop at the conclusion of the

termination of parental rights hearing. ***See id*.**, at 590. ***See also In re M.T.*,** 607 A.2d 271, 276 (Pa. Super. 1992) (observing that child's counsel abdicated his legal responsibilities to his client because counsel, *inter alia*, failed to file a brief, indicate that he joined another party's brief, or otherwise notify this Court of his client's position).

Here, the trial court appointed Attorney Smith as legal counsel for Child. Attorney Smith was present at the hearings and conducted cross-examination of witnesses. However, he did not indicate Child's legal preference, and there is nothing in the record to demonstrate that he interviewed Child, who was nearly eight years old at the time, to ascertain his preferred outcome. And there is nothing in the record that clearly indicates Child's preference.

The record indicates Child "goes back and forth about where he wants to be." N.T., 10/17/17, at 23. Later testimony indicated DHS placed Child in respite care in November 2017 when another foster child in the foster home sexually touched Child. **See** N.T., 12/1/17, at 25. Child reported to DHS he did not feel safe in the foster home, and did not want to go back. ***See id*.** However, Child has also discussed with his foster mother bringing his dirt bike over to his foster home when the foster parents adopts him. ***See id*.**, at 27. Attorney Smith, in his concluding remarks, indicated he did not want to repeat the remarks and argument of Mother's counsel. **See** N.T., 11/29/17, at 50.[1]

---

[1] For reasons that are not clear from the record, the transcript labeled December 1, 2017, appears to be the testimony from November 29, 2017,

Attorney Smith noted, "[Mother] had been working towards, … progress with continuing with services and continuing with whatever counseling that she had to do." *Id*. He then stated, "what I want[] to focus most on, of course, is the best interest of the children,"[2] referencing the bond between Child and his brother. *See id*. Attorney Smith asserted the bond was "a very, very important consideration in their interest with, you know, having the opportunity to grow up with their mom." *Id*., at 50-51. Further, Attorney Smith noted "[i]t seems that these children do indeed love their mother and care about her a great, great deal." *Id.*, at 50. Attorney Smith concluded:

> So, Judge, I would just say, of course, considering the best interest of these children and, of course, the bond that they have with the mother, I think that's a, … vital import here. Thank you, Judge.

*Id*., at 51.

There is no evidence Attorney Smith spoke with Child, and Attorney Smith failed to clearly convey Child's preferred outcome, focusing instead on his best interests. Compounding these issues, Attorney Smith did not file a brief in this Court, nor did he join the brief of another party.

Accordingly, we are constrained to vacate the order in this matter, and remand for further proceedings. *See In re Adoption of T.M.L.M.*, 184 A.3d 585, 587-591 (Pa. Super. 2018) (vacating and remanding for further

---

while the transcript labeled November 29, 2017, appears to be from December 1, 2017, as it includes counsels' closing remarks.

[2] Attorney Smith represented both Child and his brother.

proceedings where the attorney admitted she did not interview the nearly six-year-old child to ascertain the child's preferences). *See also In re Adoption of D.M.C.*, ___ A.3d ___, 2018 WL 3341686 (Pa. Super., filed July 9, 2018) (vacating and remanding where the record was unclear in what capacity the attorney had been appointed to represent the children and whether the attorney had ascertained the children's legal interests prior to the hearing); *In re Adoption of M.D.Q.*, ___ A.3d ___, 2018 WL 3322744 (Pa. Super., filed July 6, 2018) (vacating and remanding where the record does not indicate that counsel attempted to ascertain the children's preferences and the record does not reflect the children's legal interests).

On remand, we direct the trial court to re-appoint legal counsel for Child forthwith. Counsel must attempt to ascertain Child's preferred outcome as to Mother by directly interviewing Child, following his direction to the extent possible, and advocating in a manner that comports with Child's legal interests. Once Child's preferred outcome is identified, counsel shall notify the trial court whether termination of Mother's parental rights is consistent with Child's legal interests.

If Child's preferred outcome is consistent with the result of the prior termination proceedings, the trial court shall re-enter its December 14, 2017 order as to Mother. If the preferred outcome is in conflict with the prior proceeding, the trial court shall conduct a new termination hearing as to Mother to provide Child's legal counsel an opportunity to advocate on behalf of Child's legal interests. *See T.M.L.M.*, 184 A.3d at 591 (ordering that the

trial court shall conduct a new hearing only if it serves the "substantive purpose" of providing the child with the opportunity to advance his legal interests through new counsel).

Order vacated as to Mother without prejudice to permit the trial court to re-enter the original order if a new termination hearing is not required. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/21/2018