J-S37001-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.R.F.H.-H. A/K/A A.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.H., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 148 EDA 2018 |

Appeal from the Order Entered December 15, 2017
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s): CP-51-AP-0001097-2017,
CP-51-DP-0002642-2016, FID: 51-FN-002518-2016

BEFORE: OLSON, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

MEMORANDUM BY OLSON, J.:          **FILED OCTOBER 01, 2018**

Appellant, D.H. (Father) appeals from the order entered on December 15, 2017, involuntarily terminating his parental rights to A.R.F.-H., a.k.a., A.H. (a female, born in January, 2014) (the Child). Upon review of the record and recent, applicable case law, we are constrained to vacate the order without prejudice and remand this case for further proceedings consistent with this memorandum.

The trial court summarized the facts and procedural history of this case as follows:

> On November 16, 2016, the Department of Human Services (DHS) received a General Protective Services (GPS) report which alleged that [the Child] and her parents were squatting in [a] home located [on] North 19th Street; that the home had a strong odor of marijuana; and that Father sold drugs in [the Child's] presence.

---

\*   Former Justice specially assigned to the Superior Court.

The report alleged Mother[1] and Father left [the Child] in the care of her Maternal Grandfather and never returned. Father telephoned Maternal Grandfather twice and stated during the first call he was in Miami and during the second call stated he was in New York. The report alleged the police were called as Father tried to remove [the Child] from Maternal Grandfather's care. It was further alleged in the presence of Philadelphia [p]olice, [that] Father threated to damage Maternal Grandfather's home [and] vehicle and assault Maternal Grandfather. The report alleged Mother and Father had domestic violence issues.

On November 17, 2016, DHS attempted a visit at the home of Maternal Grandfather; however, there was no answer.

On November 18, 2016, Maternal Grandfather telephoned DHS and stated [the Child] had been in his care since August 2016. Maternal Grandfather stated he planned to obtain a Protection from Abuse (PFA) order against Father because Father came to Maternal Grandfather's home on November 12, 2016 and tried to remove [the Child] from his care. Maternal Grandfather stated that Father threatened to harm him and that there was a physical altercation. The Philadelphia Police Department was contacted.

DHS received allegations that Father had no contact with [the Child] and lacked stable and appropriate housing.

On November 18, 2016, DHS attempted to contact Father; however[,] the [tele]phone was disconnected.

On November 28, 2016, DHS met with Maternal Grandfather who stated that on November 23, 2016, Father had attempted to remove [the Child] from daycare, but [the Child] was not in school due to illness. DHS determined that Maternal Grandfather's home was appropriate.

On November 28, 2016, DHS obtained an Order of Protective Custody (OPC), and [the Child] remained in the care of Maternal Grandfather.

_____

[1] Mother, R.H., was facing termination of her parental rights and was present at the hearing to terminate Father's parental rights. However, Mother's counsel was not present and her case was continued. Mother is not a party to the instant appeal.

On November 29, 2016, DHS spoke with Father who admitted marijuana use. Father stated he left [the Child] in Maternal Grandfather's care in August 2016 due to out of state employment. Father asked Maternal Grandfather to care for [the Child] for a couple of months. [On November 29, 2016, the trial court appointed Daniel Silver, Esquire as the guardian *ad litem* [GAL] for the Child.]

At the [s]helter [c]are [m]eeting held on November 30, 2016, the [c]ourt lifted the OPC, ordered the temporary commitment to stand, referred Father to the Clinical Evaluation Unit (CEU) for a drug and alcohol screen[] with dual diagnosis assessments and issued a [s]tay-[a]way [o]rder against Father as to Maternal Grandfather and his home.

On November 30 2016, Father tested positive for marijuana.

At the [a]djudicatory [h]earing held on December 7, 2016, the [c]ourt discharged the temporary commitment to DHS; adjudicated [the Child] dependent based on present inability to provide proper parental care and control; and committed [the Child] to the custody of DHS. Father was referred to the CEU for drug screens, dual-diagnosis assessments, monitoring and three random drug screens and ordered to follow all recommendations. Father was referred to domestic violence counseling, housing assistance, and parenting education classes and to the Achieving Reunification Center (ARC) for appropriate services. The [s]tay-[a]way [o]rder as to Father was ordered to stand. The [c]ourt ordered Father not to have any contact with [the Child's] daycare. Father was to be awarded weekly supervised [] visits with [the Child] at the agency and was ordered to confirm visits 24 hours in advance.

On December 19, 2016, Community Umbrella Agency (CUA) – Wordsworth held an initial Single Case Plan (SCP) meeting. [The Child's] goal was identified as reunification. The parental objectives for Father included the following: 1) improve relationship with [the Child]; 2) attend weekly supervised line-of-sight visits with [the Child]; 3) correct or stabilize health and sign all necessary consent forms; 4) comply with all court orders, service plans, and recommendations; 5) comply with [the] [s]tay-[a]way [o]rder as to Maternal Grandfather and [the Child's] daycare; 6) attend ARC for parenting education and housing

services; 7) contact Menergy for domestic violence counseling; 8) achieve and maintain recovery for drug and alcohol issues; 9) attend CEU for an assessment and follow treatment recommendations; 10) complete three random drug screens; and 11) [complete] all necessary consent forms for [the Child].

On January 18, 2017, Father tested positive for marijuana.

Wordsworth completed a [v]isitation [a]ssessment for Father's January 21, 2017 visit with [the Child]. The assessment noted that Father failed to bring any snacks or gifts for [the Child] and that this was the first visit since October, 2016.

On March 7, 2017, the CEU completed a progress report for Father. The report stated that Father failed to go to the CEU following the December 7, 2016 hearing as court-ordered. Father failed to attend his scheduled assessment on December 14, 2016 [] and that Father failed to contact his case manager to reschedule an assessment.

At the [p]ermanency [h]earing held on March 7, 2017, the [c]ourt found that [the Child's] placement continued to be necessary and appropriate, and ordered [the Child's] commitment to DHS to stand. Father was referred to the CEU for a drug screen and three random drug screens. Additionally, Father was referred for a dual-diagnosis assessment. Supervised line-of-sight and hearing visits were ordered to continue. Father was ordered to confirm his attendance 24 hours before each visit.

The matter was [] listed on a regular basis before judges of the Philadelphia Court of Common Pleas, Family Court Division-Juvenile Branch pursuant to [S]ection 6351 of the Juvenile Act, 42 Pa.C.S.A. § 6351, and evaluated for the purpose of reviewing the permanency plan of the [C]hild. In subsequent hearings, the [d]ependency [r]eview [o]rders reflect the [c]ourt's review and disposition as a result of evidence presented, primarily with the goal of finalizing the permanency plan.

On December 15, 2017, during the [t]ermination of [p]arental [r]ights [h]earing for Father, the [c]ourt found by clear and convincing evidence that Father's parental rights, should be terminated pursuant to the Juvenile Act. Furthermore, the [c]ourt held it was in the best interest of the [C]hild that the goal be changed to [a]doption.

Trial Court Opinion, 3/23/2018, at 1-3. This timely appeal resulted.[2]

On appeal, Father presents the following issues for our review:

1. Whether the [t]rial [c]ourt erred by terminating the parental rights of [Father] under 23 Pa.C.S.A. § 2511(a)(1)?

2. Whether the [t]rial [c]ourt erred by terminating the parental rights of [Father] under 23 Pa.C.S.A. § 2511(a)(2)?

3. Whether the [t]rial [c]ourt erred by terminating the parental rights of [Father] under 23 Pa.C.S.A. § 2511(a)(5)?

4. Whether the [t]rial [c]ourt erred by terminating the parental rights of [Father] under 23 Pa.C.S.A. § 2511(a)(8)?

5. Whether the [t]rial [c]ourt erred by terminating the parental rights of [Father] under 23 Pa.C.S.A. § 2511(b)?

Father's Brief at 5.

Before we may consider the merits of the issues raised on appeal, we must consider whether Child was adequately represented by legal counsel at the termination hearing.[3] Recently, and applicable herein, our Supreme Court issued an opinion to clarify a child's statutory right to the appointment of legal counsel. *See In re T.S.*, 2018 WL 4001825 (Pa. 2018). That decision further examined the Supreme Court's prior decision in *In re Adoption of L.B.M.*, 161 A.3d 172 (Pa. 2017) and explained that children have a clear statutory

---

[2] On January 10, 2016, Father filed a notice of appeal and corresponding concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). The trial court filed an opinion pursuant Pa.R.A.P. 1925(a) on March 23, 2018.

[3] This Court must raise the failure to appoint statutorily-required legal counsel for children *sua sponte*. *In re K.J.H.*, 180 A.3d 411 (Pa. Super. 2018).

right to mandatory appointment of counsel to represent their legal interests[4] in contested termination of parental rights proceedings.

Our Supreme Court granted allowance of appeal in *In re T.S.* to determine whether separate attorneys were required to represent a child's best interests apart from his or her legal interests. The Supreme Court clarified its *L.B.M.* decision, recognizing that, "where a child's legal and best interests do not diverge in a termination proceeding, an attorney-[guardian *ad litem*] representing the child's best interests can also fulfill the role of the attorney appointed [] to represent the child's legal interests." *In re T.S*., 2018 WL 4001825, at *6. The *T.S.* Court also noted that the majority view in *L.B.M.* "indicated that, where a child is too young to express a preference, it would be appropriate for the [guardian *ad litem*] to represent the child's best and legal interests simultaneously." *Id.* The *T.S.* Court ultimately concluded that when a child is too young[5] or non-verbal, the child's wishes cannot be ascertained, and therefore there is no duty to advise the court. *Id.* ("As a

---

[4] "[A] child's legal interests [] are synonymous with the child's preferred outcome[.]" *In re Adoption of L.B.M.*, 161 A.3d at 174. Whereas, a child's best interests are to be determined by the trial court. *Id.*

[5] In *T.S.*, the Supreme Court and "[t]he parties agree[d] that, due to the children's very young age (two and three years old), they [could not] have formed a subjective, articulable preference to be advanced by counsel during the termination proceedings[.]" *Id.* at *7. Conversely, however, the *T.S.* Court noted that Pennsylvania's Rules of Professional Conduct refer to "children as young as five or six years of age ... having opinions which are entitled to weight in legal proceedings concerning their custody." *Id.* at *7 n.17, *citing* Pa.R.P.C. 1.14, Explanatory Comment 1. In this case, there is no dispute that at the time of the termination proceeding, the Child was over four years old.

matter of sound logic, there can be no conflict between an attorney's duty to advance a subjective preference on the child's part which is incapable of ascertainment, and an attorney's concurrent obligation to advocate for the child's best interests as she understands them to be."). Ultimately, the **T.S.** Court concluded:

> We [] reaffirm certain principles agreed upon by a majority of Justices in **L.B.M**., namely, that during contested termination-of-parental-rights proceedings, where there is no conflict between a child's legal and best interests, an attorney-guardian *ad litem* representing the child's best interests can also represent the child's legal interests. [...M]oreover, if the preferred outcome of a child is incapable of ascertainment because the child is very young and pre-verbal, there can be no conflict between the child's legal interests and his or her best interests[.]

**Id.** at *10.

Finally, in **In re Adoption of T.M.L.M.**, 184 A.3d 585 (Pa. Super. 2018), this Court examined the requirements necessary for counsel to provide adequate representation of a child's legal interests as follows:

> At the time of the hearings, [T.M.L.M.] was just shy of six years old. While [T.M.L.M.] may not have been old enough to participate actively in [court appointed counsel's] representation of him, it is not unlikely that [T.M.L.M.] has feelings one way or another about his mother and his permanency. Like adult clients, **effective representation of a child requires**, **at a bare minimum**, **attempting to ascertain the client's position and advocating in a manner designed to effectuate that position**. It may be that [T.M.L.M.'s] preferred outcome in this case is synonymous with his best interests. It may be that [T.M.L.M.] wants no contact with Mother. [T.M.L.M.] may be unable to articulate a clear position or have mixed feelings about the matter. Furthermore, termination of Mother's rights may still be appropriate even if [T.M.L.M.] prefers a different outcome.

*In re Adoption of T.M.L.M.*, 184 A.3d 585, 590 (Pa. Super. 2018) (emphasis added) (internal citation omitted).

Here, our review of the certified record reveals the following. On November 29, 2016, the trial court entered an "Order Appointing Counsel as Child Advocate" naming Daniel Silver, Esquire "to represent the interests of the Child in connection with proceedings related to dependency, termination of parental rights, and adoption." Order Appointing Counsel as Child Advocate, 11/29/2016, at 1. At the termination proceeding, Attorney Silver entered his name on the record, stating that he was representing the Child as guardian *ad litem*. N.T., 15/15/2017, at 3-4. James King, Esquire was also present at the termination hearing. *Id.* at 3. Attorney King stated that he was representing the Child as "Child Advocate." *Id.* Upon review of the record, however, there is no order or other indication of when, if, or in what capacity the trial court appointed Attorney King. Likewise, there is no written entry of appearance for Attorney King in the certified record.

During the termination of parental rights proceeding, counsel for DHS called the social worker involved with the Child as the sole witness. The social worker ultimately testified that she believed that it was in the Child's best interest to terminate Father's parental rights. *Id.* at 27-28. Attorney Silver asked this witness questions pertaining to Father's visitation, compliance with drug and alcohol treatment, and progress with domestic violence and parenting classes. *Id.* at 30-32. Attorney King asked a sole question

pertaining to the pre-adoptive home. *Id.* at 32. Thereafter, neither Attorney Silver nor Attorney King had any additional evidence or witnesses. *Id.* at 34.

At the end of the proceedings, counsel for DHS argued that there was clear and convincing evidence that Father had not remedied the conditions that led to the Child coming into the agency's care and that termination of Father's rights was in the Child's best interest. *Id.* at 43. Both Attorneys Silver and King agreed with the recommendation that the termination of Father's parental rights would be in the Child's best interest and had nothing further to add. *Id.* at 44. Neither attorney, however, advanced the Child's legal interests, provided evidence of the Child's preferred outcome in the termination proceedings, or indicated the Child's preference was unable to be ascertained because of age or level of development.

Based upon the record before us, there is no indication that counsel interviewed the Child to determine whether she could verbalize a preferred outcome as required. As such, counsel has not ascertained whether there was a conflict between the Child's best and legal interests. Therefore, the record does not substantiate that the Child's statutory right to legal counsel was observed. Hence, we are constrained to vacate the order terminating Father's parental rights without prejudice. On remand, after reviewing the prior proceedings and appropriately consulting with the Child, Attorney King shall notify the trial court whether the result of the prior proceedings was consistent with the Child's legal interests or whether counsel believes a new hearing is necessary to advocate a separate preferred outcome or placement for the

Child.  *See T.M.L.M.*, 184 A.3d at 591.  The trial court shall conduct a new hearing only if it serves the substantive purpose of providing the Child with an opportunity to advance her legal interests through new counsel.  *Id.*  If, however, a new hearing is deemed unwarranted, the trial court may re-enter the original order terminating Father's parental rights.

Order vacated without prejudice.  Case remanded for additional proceedings consistent with this memorandum.  Jurisdiction relinquished.

Judge McLaughlin joins the memorandum.

President Judge Emeritus Stevens concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/1/18