J-S53016-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.L.M.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: S.P., MOTHER | : | |
| | : | No. 741 EDA 2017 |

Appeal from the Decree Entered January 27, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-AP-0000916-2015,
CP-51-DP-0000356-2014

| | | |
|---|---|---|
| IN THE INTEREST OF: S.B.K.P., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: S.P., MOTHER | : | |
| | : | No. 743 EDA 2017 |

Appeal from the Decree Entered January 27, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-AP-0000917-2015,
CP-51-DP-0000357-2014

BEFORE:  BENDER, P.J.E., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OLSON, J.:                          **FILED OCTOBER 10, 2018**

In these consolidated appeals, S.P. ("Mother") appeals from the January 27, 2017 decrees terminating her parental rights to her children, S.B.K.P. ("Child 1"), a son born in April of 2011, and A.L.M.F. ("Child 2"), a daughter born in September of 2009 (collectively "Children"), and from the orders dated

the same date changing Children's permanency goal to adoption.[1, 2]  Upon careful review, we vacate and remand.

On November 12, 2013, the Philadelphia Department of Human Services ("DHS") received a General Protective Services ("GPS") report alleging that Children did not have stable housing and Mother abused drugs.  Petitioner's Exhibit 3.  After an investigation, DHS determined that the report was valid. *Id.*  DHS enlisted the services of Community Umbrella Agency ("CUA") Asociacion Puertorriquenos en Marcha ("APM") to provide in-home services to Mother and Children, however APM could not locate Mother in order to implement those services until January of 2014.

On January 31, 2014, APM located Mother at the Appletree Family Shelter.  Mother indicated that she had been residing with a friend until they had a disagreement, after which Mother moved to the shelter.  APM placed Children with Maternal Aunt, who agreed to care for Children while Mother secured stable housing.  On February 7, 2014, DHS received a Child Protective Services ("CPS") report that Mother had abandoned Children with Maternal Aunt and that Child 2 was in need of medical attention.  DHS filed a petition for order of protective custody, which the trial court granted, and Children

_____

[1] Child 1's father, K.T. ("Father 1"), terminated his parental rights by consent. The trial court also entered a separate decree involuntarily terminating the parental rights of Child 1's unknown father, Child 2's father, W.F. ("Father 2") and Child 2's unknown father.  Father 1, Father 2 and all unknown fathers did not file a brief in connection with this appeal, nor did they file a separate appeal.

[2] Mother has a third child born in June 2003.

entered temporary DHS custody. Children remained in DHS custody pursuant to a shelter care order entered on February 10, 2014, and the trial court adjudicated Children dependent on March 21, 2014.

On December 24, 2015, DHS filed petitions to terminate involuntarily Mother's parental rights to Children and change Children's permanency goal to adoption. DHS amended the petitions on January 10, 2017. On January 27, 2017, the trial court held a hearing on the petitions. At the conclusion of the hearing, the trial court orally delivered its decree involuntarily terminating Mother's parental rights and changing Children's permanency goal to adoption. The trial court entered its decree on that same date. On February 27, 2017, Mother timely filed a notice of appeal and concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(i) and (b).

Mother now raises the following issues for our review.

1. Did [DHS] sustain its burden that Mother's rights should be terminated when there was evidence that Mother had completed and/or had been actively completing her permanency goals?

2. Was there [] sufficient evidence presented to establish that it was in the best interests of the children to terminate Mother's parental rights?

3. Did the trial court fully consider all the necessary factors pursuant to the Pennsylvania Juvenile Act, specifically [42] Pa[.]C[.]S[.]A[.] § 6351 (e) & (f), in its determination that the goal of adoption is in the children's best interest?

Mother's Brief at 4 (trial court answers omitted).[3]  Mother's brief also contends that our Supreme Court's decision in **In re Adoption of L.B.M.**, 161 A.3d 172 (Pa. 2017) requires that we vacate the trial court's order and remand the case for the appointment of separate counsel for Children and to conduct a "*de novo* review of the appropriateness of the permanency goal and termination." Mother's Brief at 21.

Before we reach the merits of Mother's enumerated issues, we must consider whether Children were adequately represented by legal counsel at the termination hearing.[4]  In **L.B.M.**, our Supreme Court held that trial courts must appoint counsel to represent the legal interests of any child involved in a contested termination proceeding pursuant to 23 Pa.C.S.A. § 2313(a).[5]  **See**

_____

[3] Mother framed her enumerated issues somewhat differently in her concise statement, but they were sufficiently preserved for our review.

[4] This Court has held that the failure to appoint statutorily-required legal counsel for children must be raised *sua sponte*.  **In re K.J.H.**, 180 A.3d 411 (Pa. Super. 2018).  We need not do so in this case as Mother raised the issue in her appellate brief.

[5] Section 2313(a) provides as follows.

> **(a)  Child.—**The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian ad litem to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child.  No attorney or law firm shall represent both the child and the adopting parent or parents.

***In re Adoption of L.B.M.***, 161 A.3d at 183. The ***L.B.M.*** Court explained that a child's legal interests are distinct from his or her best interests, in that a child's legal interests are synonymous with the child's preferred outcome, while a child's best interests must be determined by the court. ***Id.*** at 174. While our Supreme Court held in ***L.B.M.*** that courts must appoint counsel, the justices disagreed on whether the role of counsel may be fulfilled by a child's existing dependency guardian *ad litem* ("GAL") where a child's legal and best interests do not diverge. ***See id.*** at 183. In addition, although the Court, in ***L.B.M.***, held that the failure to appoint legal interest counsel in a contested termination case constituted structural error that was not subject to harmless error analysis, it was unclear whether such an omission was subject to waiver principles.[6]

Recently, our Supreme Court issued an opinion that clarified many of the issues raised in ***L.B.M***. ***See In re T.S.***, 2018 WL 4001825 (Pa. 2018). Specifically, the Court in ***T.S.*** held that the issue of whether the trial court erred in failing to appoint separate legal interest counsel was non-waivable. ***See id***. at *5. In addition, a guardian *ad litem* who represents a child's best interests can also represent the legal interests of the child in a contested termination proceeding so long as the child's legal and best interests do not

---

23 Pa.C.S.A. § 2313(a).

[6] The mother in ***L.B.M.*** raised the child's right to legal interest counsel before the trial court. Here, the issue was not raised before the trial court but was first raised by Mother in her brief filed with this Court.

diverge. ***See id*.** at *6 and 10 ("during contested termination-of-parental-rights proceedings, where there is no conflict between a child's legal and best interests, an attorney-guardian *ad litem* representing the child's best interests can also represent the child's legal interests").

Finally, this Court has examined the requirements for adequate representation of a child's legal interests in the context of contested termination proceedings. In ***In re Adoption of T.M.L.M.***, 184 A.3d 585 (Pa. Super. 2018), we stated as follows:

> At the time of the hearings, [T.M.L.M.] was just shy of six years old. While [T.M.L.M.] may not have been old enough to participate actively in [court appointed counsel's] representation of him, it is not unlikely that [T.M.L.M.] has feelings one way or another about his mother and his permanency. Like adult clients, **effective representation of a child requires**, **at a bare minimum**, **attempting to ascertain the client's position and advocating in a manner designed to effectuate that position**. It may be that [T.M.L.M.'s] preferred outcome in this case is synonymous with his best interests. It may be that [T.M.L.M.] wants no contact with [his m]other. [T.M.L.M.] may be unable to articulate a clear position or have mixed feelings about the matter. Furthermore, termination of [his m]other's rights may still be appropriate even if [T.M.L.M.] prefers a different outcome.

***In re Adoption of T.M.L.M.***, 184 A.3d 585, 590 (Pa. Super. 2018) (emphasis added) (internal citation omitted).

Based upon the record before us, there is no indication that legal interest counsel was ever appointed or that Children have been interviewed to determine whether they possess the capacity to verbalize a preferred

- 6 -

outcome.[7]  As such, no one has, as yet, ascertained whether there was a conflict between Children's best and legal interests.  Therefore, the record does not substantiate that Children's statutory right to legal counsel was observed.  Hence, we are constrained to vacate the order terminating Mother's parental rights without prejudice.  On remand, the trial court shall appoint legal interest counsel for Children.  Counsel shall review the entire record from the prior proceedings and appropriately consult with Children for the purpose of ascertaining Children's subjective preferences.  Thereafter, legal interest counsel shall notify the trial court whether the result of the prior proceedings was consistent with Children's legal interests or whether counsel believes a new hearing is necessary to advocate a separate preferred outcome or placement for Children.  **See T.M.L.M.**, 184 A.3d at 591.  The trial court shall conduct a new hearing only if it serves the substantive purpose of providing Children with an opportunity to advance legal interests that differ from their best interests.  **Id.**  If, however, a new hearing is deemed unwarranted, the trial court may re-enter the original decrees terminating Mother's parental rights.

---

[7] Children are presently seven and nine years of age and clearly not too young to have formed a subjective, articulable preference that can be advanced by counsel during the termination proceedings.  In **T.S.**, the Supreme Court noted that Pennsylvania's Rules of Professional Conduct refer to "children as young as five or six years of age ... having opinions which are entitled to weight in legal proceedings concerning their custody." **In re T.S.**, 2018 WL 4001825 at *7 n.17, *citing* Pa.R.P.C. 1.14, Explanatory Comment 1.

Decrees vacated without prejudice. Case remanded for additional proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/10/18