J-S55002-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: Z.F.B., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: H.B., FATHER | : : : : : : : | |
| | : | No. 1328 EDA 2018 |

Appeal from the Decree and Order Entered April 11, 2018
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-AP-0000492-2016,
CP-51-DP-0022243-2010

BEFORE:  OLSON, J., STABILE, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OLSON, J.:                    **FILED OCTOBER 30, 2018**

H.B. ("Father") appeals from the decree and order entered on April 11, 2018, granting the petitions filed by the Philadelphia Department of Human Services ("DHS") seeking to terminate involuntarily his parental rights to his minor child, Z.F.B., a male born in August 2007 ("Child"), with M.A. ("Mother"), pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b), and to change Child's permanency goal to adoption under 42 Pa.C.S. § 6351.[1]  We vacate and remand.

---

[1] On January 24, 2018, the trial court confirmed Mother's consent to adoption of Child, and terminated the parental rights of Mother to Child pursuant to the Adoption Act.  Additionally, in a separate decree entered on April 11, 2018, the trial court involuntarily terminated the rights of any putative father to Child pursuant to section 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act.

On May 27, 2016, DHS filed petitions to terminate involuntarily the parental rights of Father, Mother, and any putative father to Child. The trial court appointed a child advocate, Attorney Jeffrey C. Bruch, and a guardian *ad litem* ("GAL"), Attorney Emily Cherniack, for Child.[2] On August 1, 2017, Mother filed petitions for voluntary relinquishment of her parental rights to Child and to confirm her consent to adoption. On January 24, 2018, after a hearing, the trial court permitted the withdrawal of the involuntary and voluntary petitions to terminate Mother's parental rights to Child, and confirmed Mother's consent to adoption, thus terminating Mother's parental rights to Child.

On April 11, 2018, the trial court held a hearing on the petition with regard to Father. At the hearing, DHS presented the testimony of Lu Bai, the CUA case manager from Bethanna. N.T. Hearing, 4/11/18, at 6. Father was represented by his counsel, Attorney Claire Leotta, and testified from House of Corrections, Philadelphia, via telephone. *Id.* at 2 and 36. Ms. Bai testified that Child, who was not present, was ten years old. *Id.* at 8.

_____

Neither Mother nor any putative father is a party to this appeal, nor has Mother or any such individual filed a separate appeal.

[2] Both attorneys represented Child at the hearing on the termination petition, but only the GAL filed a brief on appeal.

In its opinion filed pursuant to Pa.R.A.P. 1925(a), the trial court aptly set forth the factual background and procedural history of this appeal, which we set forth herein.

On February 24, 2010, [] Child's family became known to [DHS] when DHS received a General Protective Services ("GPS") report, which alleged that [Mother] failed to retrieve [] Child's sibling from an afterschool program. The GPS report also alleged that when [] Child's sibling was transported to the family home from the afterschool program it was discovered that [] Child was at the family home without adult supervision. On February 24, 2010, DHS obtained an Order for Protective Custody ("OPC") for [] Child and his sibling (the "Children"). On March 5, 2010, following a hearing, [the] Children were adjudicated dependent. [The] Children were placed with their maternal grandmother.

On May 14, 2013, DHS received a GPS report alleging that the Child's maternal grandfather threatened [] Child with physical harm. These physical threats included threats by the maternal grandfather that he would remove [] Child's fingers because [] Child had eaten his pork rinds. As a result, the family was referred for In-Home Protective Services ("IHPS"). . . .

On October 1, 2014, DHS received a Child Protective Services ("CPS") report alleging that [] Child's maternal grandfather physically abused [] Child. The CPS report also alleged that Child had behavioral problems at school. On October 22, 2014, Child began residing with a family friend since he was afraid to reside with the maternal grandfather. On February 17, 2015, an initial Single Case Plan ("SCP") was created. The parental objectives for [] Father were (1) to continue to visit [] Child in accordance to the court ordered restrictions; (2) Father would bring [] Child's siblings to visit [] Child; and[,] (3) Father would complete all recommendations provided by the Clinical Evaluation Unit ("CEU").

On February 26, 2015, Child began residing with new foster parents. On March 12, 2015, Child began residing with his maternal aunt. On August 29, 2015, [] Father was arrested and charged with robbery, theft by unlawful taking, receiving stolen property, simple assault[,] and recklessly endangering another person. On February 26, 2016[,] a revised SCP was created for

- 3 -

Father. The objectives for Father were that (1) Father would comply with visitation and (2) Father would complete all CEU recommendations. . . .

The underlying Petition to Terminate Father's Parental Rights to Child was filed on May 27, 2016 because Father had failed to meet his SCP objectives. By the date of the [h]earing, Child was no longer living with his maternal aunt but he was hospitalized at Silver Springs Residential Treatment Facility to address behavioral problems.

Trial Court Opinion, 6/6/18, at 2-4 (internal citations omitted).

On April 11, 2018, the trial court entered the decree involuntarily terminating the parental rights of Father to Child. In a separate order, the trial court ordered that legal custody of Child would remain with DHS, and that Child was to be placed in a residential facility, Silver Springs, as of April 10, 2018. The court further ordered that Child would remain as committed and placed, and his permanency goal would be adoption in 30 days. Additionally, the permanency review order provided that the appointment of counsel for Child would be vacated in 31 days from the docketing of the termination decree, with the GAL to continue in her dual role. On April 30, 2018, Father timely filed his notice of appeal and concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). In his concise statement, Father challenged the goal change to adoption.[3]

_____

[3] In his statement of questions involved portion of his brief, Father did not challenge the goal change. We, thus, find that Father waived his challenge to the goal change. **See Krebs v. United Ref. Co.**, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that an appellant waives issues that are not raised in

- 4 -

In his brief on appeal, Father raises the following issues:

1. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Father, H.B.[,] pursuant to 23 Pa.C.S.A. section 2511(a)(1) where Father presented evidence that he made significant efforts to perform [his] parental duties[?]

2. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Father, H.B.[,] pursuant to 23 Pa.C.S.A. section 2511(a)(2) where Father presented evidence that he made significant efforts to remedy any incapacity or neglect[?]

3. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Father, H.B.[,] pursuant to 23 Pa.C.S.A. sections 2511(a)(5) and (a)(8) where evidence was provided to establish that the children were removed from the care of Mother and maternal grandparents, not Father[?]

4. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Father, H.B.[,] pursuant to 23 Pa.C.S.A. sections 2511(b) where evidence was presented that Father has a positive parental bond with the child that would be detrimental to sever, and no one had ever spoken to the child about his preferred outcome[?]

Father's Brief at 8.

Before we consider the merits of Father's claims, we must first consider whether Child was properly represented at the proceedings before the trial court. In **In re Adoption of L.B.M.**, 161 A.3d 172 (Pa. 2017), our Supreme Court addressed "whether 23 Pa.C.S. § 2313(a), which mandates the appointment of counsel for children involved in contested involuntary termination of parental rights ("TPR") proceedings, is satisfied by the

---

both his or her concise statement of errors complained of on appeal and the statement of questions involved in his or her brief on appeal).

appointment of a guardian *ad litem* ("GAL") provided that the GAL is an attorney." ***L.B.M.***, 161 A.3d at 174. The ***L.B.M.*** Court did not overrule this Court's holding in ***In re K.M.***, 53 A.3d 781 (Pa. Super. 2012), that a GAL, who is an attorney, may act as legal counsel pursuant to section 2313(a) as long as the dual roles do not create a conflict between the child's legal and best interests. The Court defined a child's legal interest as synonymous with his or her preferred outcome.

Subsequently, in ***In re T.S.***, ___ A.3d ___, 2018 WL 4001825 (Pa. 2018), our Supreme Court held that the trial court did not err in allowing the children's GAL to act as their sole representative during the termination proceeding because, at two and three years old, they were incapable of expressing their preferred outcome. The Court explained:

> if the preferred outcome of the child is incapable of ascertainment because the child is very young and pre-verbal, there can be no conflict between the child's legal interests and his or her best interests; as such, the mandate of Section 2313(a) of the Adoption Act that counsel be appointed 'to represent the child,' 23 Pa.C.S. § 2313(a), is satisfied where the court has appointed an attorney-[GAL] who represents the child's best interests during such proceedings.

***Id.*** at *10.

Although not raised by Father before the trial court or in his appeal before this Court, we are constrained to raise the issue *sua sponte* as to whether Child was adequately represented before the trial court. ***See In re***

*Adoption of T.M.L.M.*, 184 A.3d 585, 588 (Pa. Super. 2018) (citing *In re K.J.H.*, 180 A.3d 411, 414 (Pa. Super. 2017)).

Here, as the trial court appointed both a legal counsel and a GAL who represented Child at the termination hearing, we find that the trial court complied with the mandates of *In re L.B.M.* by appointing legal counsel to represent Child. The appointment of legal counsel, however, expired 30 days after the "docketing" of the termination and goal change orders. We find that Child's legal counsel failed to inquire as to Child's preferred outcome and did not file a brief on behalf of Child or otherwise have Child's preferred outcome admitted into evidence at the hearing. Ms. Bai testified, on cross-examination by Father's counsel, Attorney Leotta, that she had spoken to Child in October 2017 regarding whether he wished to be adopted, but had not asked Child about his preferred outcome since that time. N.T. Hearing, 4/11/18, at 25-26. Ms. Bai further testified that she had not asked Child whether he would be satisfied with the severance of his relationship with Father. *Id.* at 26. Ms. Bai stated that she had not asked Child these questions because Child was not stable in placement and because he was in the Belmont Behavioral Hospital. *Id.* When the trial court questioned Ms. Bai as to which placement she meant, since Child had been in more than six placements, Ms. Bai responded, and the following exchange occurred:

> MS. BAI: Yes. So, when he [was] released from Belmont the first time, October 2017, he was in the Silver Spring home. And then that home – after two months, that home was disrupted. He was moved to another Silver Spring home. He was there for a month.

And then that home [was] disrupted. He moved to a respite home for Bethanna. Then, due to his behavior, he ends up in CRC [Crisis Response Center]. We have to [act pursuant to section 302 of the Mental Health Procedures Act] him and –

THE COURT: I – I don't – yeah.

MS. LEOTTA: Okay.

THE COURT: I have no question the child's got --

MS. LEOTTA: Okay.

THE COURT: -- serious mental health issues.

MS. BAI: So, I did not discuss with him about adoption –

Ms. LEOTTA: Okay.

MS. BAI: during this time.

MS. LEOTTA: So, it's your testimony since October 2017 he hasn't been stable?

MS. BAI: Yes.

MS. LEOTTA: Okay. So, based on that, there's no pre-adoptive resource at this time. Correct?

MS. BAI: Yes.

N.T. Hearing, 4/11/18, at 26-27.

At the time of the proceedings at issue in the instant appeal, the holding in *In re L.B.M.* had not been extended beyond termination proceedings; however, while this appeal was pending, this Court extended the requirements of *In re L.B.M.* and its progeny to dependency actions generally. *See In re: J'K.M., a Minor*, ___ A.3d ___, 2018 WL 3121360 (Pa. Super. 2018) (reversing order denying appointment of a separate counsel for dependency

proceedings where there was a conflict between the child's best interests and legal interests).

While Child might have been too unstable, in Ms. Bai's opinion, for her, as the CUA Bethanna case manager, to interview him about his preferred outcome and his feelings about the termination of Father's parental rights since October of 2017, Child's legal counsel, Attorney Jeffrey Bruch, neither interviewed Child nor filed any brief on behalf of Child in this matter. As Child was ten years old and there is no evidence to indicate that Child was unable to offer his preferred outcome to Attorney Bruch at the time of the hearing, we are constrained to vacate the decree and order in this matter, and remand for further proceedings. *See In re T.M.L.M.*, 184 A.3d 585 (Pa. Super. 2018) (filed April 13, 2018) (vacating and remanding for further proceedings when six-year-old child's preference was equivocal and the attorney neglected to interview the child to determine whether legal and best interests were in conflict); *In re Adoption of D.M.C. and A.L.C.*, ___ A.3d ___, 2018 WL 3341686 (Pa. Super. 2018) (filed July 9, 2018) (vacating and remanding for further proceedings where the children's legal counsel had a limited conversation over the telephone with a child who was almost 13 years old, but the child's preferred outcome was not clear from the record, and counsel had no conversation to ascertain the younger, four-year-old child's preferred outcome); *In re Adoption of M.D.Q.*, ___ A.3d ___, 2018 WL 3322744 (Pa. Super. 2018) (filed July 6, 2018) (vacating and remanding where this Court

was unable to ascertain from the record whether the appointed counsel represented the subject children's legal interests and ascertained their preferred outcomes, but appeared to have speculated as to their preferred outcomes, and this Court could not determine the children's legal interests from the record, either).

On remand, we direct the trial court to re-appoint the same legal counsel and GAL for Child forthwith, and to have those appointments continue through any appeal. It is incumbent upon legal counsel to attempt to ascertain the Child's preferred outcome as to the termination of Father's parental rights and adoption by interviewing Child directly, and to follow Child's direction to the extent possible and advocate in a manner that comports with Child's legal interests, unless Child's medical or psychologist/psychiatrist or other mental health care provider opines that Child should not be questioned about these matters. Legal counsel should discern from Child whether he prefers adoption by a foster parent if the adoptive parent does not support continued contact with Father. If Child is, indeed, too mentally or medically unstable to express clearly his position as to termination of Father's parental rights or to direct counsel's representation to any extent, counsel shall notify the trial court. Once Child's preferred outcome as to the termination of Father's parental rights is identified, Child's legal counsel shall notify the trial court whether termination of Father's parental rights is consistent with Child's legal interests. If Child's preferred outcome as to Father is consistent with the result of the

prior termination proceeding, the trial court may re-enter its April 11, 2018 decree as to Father. If Child's preferred outcome as to Father is in conflict with the prior termination/goal change order, the trial court shall conduct a new termination/goal change hearing as to Father to provide Child's legal counsel an opportunity to advocate on behalf of Child's legal interest. **See T.M.L.M.**, **supra** (finding that the orphans' court shall conduct a new hearing if it serves the "substantive purpose" of providing child with an opportunity to advance his legal interests through his new counsel).

Decree and order vacated as to Father without prejudice to permit the trial court to re-enter the original decree and order if a new termination hearing is not required. Case remanded for proceedings consistent with this memorandum.

Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/30/18