J-S80016-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.W.H., JR. | : | IN THE SUPERIOR COURT OF |
| AND J.J.D., MINOR CHILDREN | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: T.D., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3039 EDA 2018 |

Appeal from the Decree Entered September 17, 2018
In the Court of Common Pleas of Northampton County Orphans' Court at
No(s):  No. 2017-0078/2017-0079

BEFORE:  BENDER, P.J.E., BOWES, J., and NICHOLS, J.

MEMORANDUM BY BOWES, J.:                    **FILED FEBRUARY 26, 2019**

T.D. ("Mother") appeals from the orphans' court decree entered on September 17, 2018, that granted the petitions of the Northampton County Department of Human Services, Children, Youth and Families ("CYF") to involuntarily terminate her parental rights to her minor sons, M.W.H., Jr. and J.J.D.[1]  We vacate and remand for further proceedings.

M.W.H., Jr. was born in June of 2011 and J.J.D. was born in November of 2015.  M.W.H., Jr. and J.J.D. came to the attention of CYF on May 25, 2016, as a result of a referral alleging that then-six-month-old J.J.D. had been left unattended in a hotel room the preceding day.  The child was discovered when law enforcement personnel arrived at the hotel room to serve a warrant

_____

[1] The orphans' court also involuntarily terminated the parental rights of the respective fathers of M.W.H., Jr. and J.J.D.  Neither father appealed.

authorizing the detention of J.J.D.'s maternal grandmother, who was a registered occupant. As officers attempted to serve the warrant, they observed Mother flee from the hotel. Since J.J.D.'s maternal grandmother was in police custody at that juncture, J.J.D. lacked adult supervision. Inside the room, the officers discovered drug paraphernalia next to J.J.D.'s baby formula.

On June 10, 2016, the juvenile court adjudicated M.W.H., Jr. and J.J.D. dependent. Mother retained legal and physical custody pursuant to a permanency plan. The permanency plan required Mother to: cooperate with mental health services, including the signing of appropriate releases; cooperate with random drug screens; cooperate with in-home services; and maintain stable and legitimate income and housing. Mother failed to comply with the permanency plan almost immediately. She tested positive for cocaine on July 5 and July 7, 2016, and missed a drug test on July 8, 2016. There were also concerns with Mother's housing, and she did not cooperate with the in-home service provider. CYF obtained an order for emergency protective custody on July 11, 2016. The children were placed together in kinship foster care with their maternal aunt and her husband.

Following the removal of her children, Mother's goals from the original permanency plan remained in place, with the addition of Mother completing a drug and alcohol evaluation. Further, Mother had the opportunity for supervised visitation. Mother's compliance with the permanency plan was

minimal. Mother's visitation was sporadic, and her visits were reduced from biweekly to weekly due to her inconsistent attendance. N.T., 7/17/18, at 20. In February of 2017, Mother witnessed a murder and, out of concern for the safety of her children, ceased visitation until May of 2017. *Id*. at 22-25. Although Mother completed a drug and alcohol treatment program in early 2017, she failed to follow up with outpatient care, and tested positive for cocaine within a week of discharge. *Id*. at 23-24, 32. Likewise, Mother missed drug tests and tested positive for cocaine as late as October 2017. N.T., 7/17/18, at 42; CYF Exhibit 4. In addition, Mother was incarcerated periodically during the proceedings. *Id*. at 39-42, 101. Mother's housing was deemed unstable as she refused to give CYF any information about the man who resided with her other than his nickname. *Id*. at 15.

M.W.H., Jr. and J.J.D. were placed in general foster care in January of 2017 due to marital issues between the maternal aunt and her husband. *Id*. at 26-27. The boys currently reside together in a pre-adoptive foster home, where they are thriving. *Id*. at 27, 35-36, 52-55.

On July 13, 2017, CYF filed petitions to involuntarily terminate Mother's parental rights to M.W.H., Jr. and J.J.D. By orders dated December 19, 2017, the orphans' court appointed Barbara Baldo, Esquire as counsel for M.W.H., Jr. and J.J.D.[2] Following several continuances, the orphans' court conducted

---

[2] M.W.H., Jr., and J.J.D. also had the benefit of a guardian *ad litem*.

a hearing on the petitions on July 17, 2018. At the hearing, CYF presented the testimony of caseworkers Amanda Christman and Allyson Barr. Mother testified on her own behalf. Attorney Baldo appeared at the hearing and participated in limited cross-examination of witnesses. By a single decree dated September 13, 2018, and entered September 17, 2018, the orphans' court involuntarily terminated Mother's parental rights to M.W.H., Jr. and J.J.D. Mother timely filed a notice of appeal, along with a concise statement of errors complained of on appeal.[3]

Mother presents the following issues for our review:

A. Whether the trial court erred in finding that Mother has evidenced a settled purpose of relinquishing parental claim to [M.W.H., Jr. and J.J.D.] or has failed to perform her parental duties without adequate explanation for her conduct?

B. Whether the trial court erred in finding that Mother has caused [M.W.H., Jr. and J.J.D.] to be without essential parental care, control, or subsistence necessary for their physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by Mother?

C. Whether the trial court erred in finding that [M.W.H., Jr. and J.J.D.] have been removed from the natural parent for a period of at least six months, and the conditions which led to the removal

---

[3] In **Commonwealth v. Walker**, 185 A.3d 969, 977 (Pa. 2018), our Supreme Court concluded that an appellant's failure to file separate notices of appeal from an order resolving issues on more than one docket "requires the appellate court to quash the appeal." Thus, in order to comply with the strict dictate announced in **Walker**, Mother was required to file separate notices of appeal from the single orphans' court decree that terminated her parental rights to both M.W.H., Jr. and J.J.D. While the certified record does not include two notices of appeal, the docket entries for the respective cases confirm that Mother appealed the order in both cases on October 30, 2018. Therefore, we do not quash the instant appeal.

or placement of [M.W.H., Jr. and J.J.D.] continue to exist, and Mother cannot or will not remedy those conditions within a reasonable period of time, and termination of parental rights best serves the needs and welfare of [M.W.H., Jr. and J.J.D.]?

D. Whether the trial court erred in finding that [M.W.H., Jr. and J.J.D.] have been removed from the natural parent for a period of at least twelve months, and the conditions which led to the removal or placement of [M.W.H., Jr. and J.J.D.] continue to exist, and Mother cannot or will not remedy those conditions within a reasonable period of time, and termination of parental rights best serves the needs and welfare of [M.W.H., Jr. and J.J.D.]?

E. Whether the trial court erred in finding that termination will meet the needs and welfare of [M.W.H., Jr. and J.J.D.]?

Mother's brief at 4-5 (citations, suggested answers, and unnecessary capitalization omitted).

Before reviewing the merits of the issues Mother wishes to raise on appeal, we must address *sua sponte* M.W.H., Jr.'s and J.J.D.'s right to legal counsel. "Appointment of counsel representing the child is mandatory, and failure to do so is legal error. This Court must raise the failure to appoint statutorily-required counsel for children *sua sponte*, as children are unable to raise the issue on their own behalf due to their minority." **In re Adoption of T.M.L.M.**, 184 A.3d 585, 588 (Pa.Super. 2018) (citations omitted).

M.W.H., Jr.'s and J.J.D.'s right to legal counsel derives from the Adoption Act, which requires the appointment of counsel in all contested involuntarily termination proceedings.

**(a) Child.--**The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian ad litem to represent any child who

- 5 -

has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S. § 2313(a).

Our Supreme Court has explained that the term "counsel" in 23 Pa.C.S. § 2313(a) refers to an attorney directed by the child who represents the child's legal interest. *In re Adoption of L.B.M.*, 161 A.3d 172, 180 (Pa. 2017). Critically, a child's legal interest is distinct from his or her best interests. *Id*. at 174. While a child's legal interest is synonymous with his or her preferred outcome, a child's best interests must be determined by the orphans' court. *Id*. The Pennsylvania Supreme Court has held that: (1) a guardian *ad litem* may serve as counsel where there is no conflict between the child's legal and best interests; and (2) that there is no conflict between the child's best and legal interests if the child is non-communicative due to the child's young age. *See In re T.S.*, 192 A.3d 1080, 1092-93 (Pa. 2018).

We find instructive this Court's recent holding in *T.M.L.M.*, which involved a child who was just under six years old at the time of the hearings to terminate his mother's parental rights. In that case, the child's attorney did not attempt to interview him, nor did she set forth his preferred outcome on the record. *T.M.L.M.*, *supra* at 589-90. The attorney advocated solely for the child's bests interests during the hearings, rather than his legal interest. *Id*. at 590. Finally, the attorney did not file a brief on appeal, nor did she join a brief filed by another party. *Id*.

This Court concluded that the attorney's representation failed to comply with the requirements of 23 Pa.C.S. § 2313(a) and our Supreme Court's holding in **L.B.M.**, **supra**, and vacated the decree terminating the mother's parental rights. We provided the following explanation for our decision.

> At the time of the hearings, Child was just shy of six years old. While Child may not have been old enough to participate actively in [the attorney's] representation of him, it is not unlikely that Child has feelings one way or another about his mother and his permanency. Like adult clients, effective representation of a child requires, at a bare minimum, attempting to ascertain the client's position and advocating in a manner designed to effectuate that position. It may be that Child's preferred outcome in this case is synonymous with his best interests. It may be that Child wants no contact with Mother. Child may be unable to articulate a clear position or have mixed feelings about the matter. Furthermore, termination of Mother's rights may still be appropriate even if Child prefers a different outcome. However, . . . it is clear that where a court appoints an attorney ostensibly as counsel, but the attorney never attempts to ascertain the client's position directly and advocates solely for the child's best interests, the child has been deprived impermissibly of his statutory right to counsel serving his legal interests.

**T.M.L.M.**, **supra** at 590.

In this case, M.W.H., Jr. was seven years old at the time of the termination hearing, while J.J.D. was more than two-and-a-half years old. However, M.W.H., Jr.'s and J.J.D.'s legal counsel did not indicate that she interviewed them in order to discern their preferred outcomes. Counsel did not explain M.W.H., Jr.'s and J.J.D.'s preferred outcomes on the record, nor did she state that she was unable to determine their preferences. We also note with disapproval that counsel failed to file a brief on appeal advocating

for M.W.H., Jr.'s, and J.J.D.'s legal interests.[4]  ***See id***. ("Counsel's duty to represent a child does not stop at the conclusion of the termination of parental rights hearing.").

Finally, we are unable to discern M.W.H., Jr.'s and J.J.D.'s legal interests from any other source in the certified record.  The testimony indicated that M.W.H., Jr. and J.J.D. are residing in the same pre-adoptive home and are thriving.  N.T., 7/17/18, at 27, 35-36, 52-55.  However, the testimony also suggests that the visits with Mother go well.  ***Id***. at 53, 59-60.  There was simply no evidence presented to clarify M.W.H., Jr.'s and J.J.D.'s preferred outcomes.[5]

Further complicating this matter, our review of the opinion submitted by the orphans' court reveals that the court erred by failing to conduct an adequate analysis of M.W.H., Jr.'s, and J.J.D.'s needs and welfare pursuant to 23 Pa.C.S. § 2511(b).  The Adoption Act provides as follows, in relevant part.

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights

---

[4] M.W.H., Jr.'s and J.J.D.'s guardian *ad litem* filed a letter joining the brief of CYF.  The letter does not reference the children's preferred outcome.

[5] We recognize that J.J.D. is currently three years old, and may be too young to express his own preferred outcome or placement.  However, because we are remanding for legal counsel to attempt to discern the legal interest of M.W.H., Jr., in the exercise of caution, counsel should do the same for J.J.D. If J.J.D. is unable to express a preference, counsel shall notify the orphans' court and represent child's best interest consistent with ***In re T.S.***, ***supra*** at 1092-93.

of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).

It is well established that an orphans' court may not involuntarily terminate parental rights without first considering the bond between the parent and his or her child, if any, and the effect that severing that bond may have on the child. **In re Adoption of A.C.H.**, 803 A.2d 224, 229 (Pa.Super. 2002). As this Court has emphasized, "[w]e cannot underestimate the importance of a child's relationship with his or her biological parents. Furthermore, we are mindful of the fact that continuity of relationships is important to a child, and we agree that severance of close parental ties through a termination of parental rights can be extremely painful." **Id.** (citations and quotation marks omitted).

In the instant matter, the orphans' court's analysis of § 2511(b) is as follows:

In summary, there is little to no progress. None of the parents [is] in a position to have the children returned to their custody, nor does it appear that any of the parents will be available as a custodial resource within the foreseeable future.

For this reason, we find that [CYF] has met i[t]s burden that it is in the children's best interests that the parental rights of [Mother, M.S, and M.W.H., Sr.,] be terminated, so that they may be adopted into a stable home.

- 9 -

Orphans' Court Opinion, 9/13/18, at 12-13.

The court's analysis features no discussion of the relevant § 2511(b) considerations. In this vein, the court neglected to address whether M.W.H., Jr. or J.J.D. has a bond with Mother, the nature of any such bonds, or the effect that severing them would have on the respective children. The court simply concluded Mother will not be available as a custodial resource within the foreseeable future, and, therefore, that it is in M.W.H., Jr.'s and J.J.D.'s best interests to terminate Mother's parental rights. This conclusory analysis is inadequate.

Based on the foregoing, we vacate the decree terminating Mother's parental rights and remand this matter to the orphans' court. *See T.M.L.M.*, *supra* at 590-91. On remand, counsel must interview M.W.H., Jr. and J.J.D. to discern their legal interests. If counsel determines that M.W.H., Jr. and J.J.D. have differing preferred outcomes, the court must appoint separate legal counsel for each child. A new hearing is required only if either child's legal interest conflicts with the result of the prior termination proceeding. *Id*. at 591. If the legal interests of M.W.H., Jr. and J.J.D. coincide with the result of the prior termination hearing, the orphans' court may re-enter the original decree terminating Mother's parental rights, *see id*, and prepare a supplemental opinion outlining a comprehensive § 2511(b) analysis for both children.

Decree vacated.  Case remanded for further proceedings consistent with this memorandum.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/26/19